NICOLAUS AMBRE

*v.*

MICHAEL WEISHAAR.

1. WILL — *attestation* — *what is, in the presence of the testator.* If the witnesses to a will, while signing their names thereto, as such witnesses are in such a place that the testator can see them if he chooses, they are

to be regarded as in his *presence*, within the meaning of the statute ; and it is not necessary that they shall be in the same room with the testator, or that he shall actually see them sign.

2. Where a will was drawn and witnesses sent for at the request of a testator, and after signing by him at his request, the witnesses went from the bedroom where he was, into a dining-room to attest the same, on account of the want of conveniences for doing so in the bedroom, and he knew that the attestation was going on in the dining-room, and approved it, and from the position he occupied in the bed could have seen the witnesses while signing : *Held*, that the will was attested in the presence of the testator,

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a bill in chancery, by Michael Weishaar against Nicolaus Ambre, to set aside the will of Barbara Ambre. The opinion states the material facts.

Messrs. WILSON & PERRY, for the appellant.

Mr. WM. HOPKINS, and Mr. ARNO VOSS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery to contest the validity of the will of Barbara Ambre, made on the 13th day of September, 1869, and which had been admitted to probate in the county court of Cook county.

The court below, on hearing without a jury, decreed against the will and set the same aside.

On this appeal from the decree, the only real question which arises upon the record is, whether the will was attested in the *presence* of Barbara Ambre.

The attestation did not take place in the same room where she was. Charles Sauter, one of the two attesting witnesses, and who drew the will, testifies that after it was signed by Mrs. Ambre he looked for some place in the bedroom where the witnesses could sign, and finding none, they, at the request of Mrs. Ambre, went into the dining-room, to witness the will

there; that they went to the front of the dining-room table, about the middle of it, and there signed their names to the will.

This table was thirteen feet distant from the head of the bed in the bedroom, where Mrs. Ambre lay, and stood about opposite the bedroom door, into the dining-room, a little to the left in going into the dining-room. The partition wall between the two rooms was eighteen inches thick. The passage way between the rooms was not at right angles with the partition wall, but inclined three inches to the left in going into the dining-room, thus increasing the facility of view from the bed to the table. The bed stood in the bedroom lengthwise with the entrance into the dining-room, with the head at the partition wall, about a foot from the door into the dining-room, and at the right in going into the dining-room. It was in evidence, that the door stood open at the time of the attestation; that Mrs. Ambre's position in bed was, that she was bolstered up at an angle of about forty-five degrees; that the bolstering brought her head and shoulders about one-third of the way down from the head of the bed; that at the time of her signing the will, she was raised, so that she sat upright in bed; that she remained in that position for some time afterward, and after the attesting witnesses had gone into the dining-room. As to her physical condition at the time, her attending physician testifies that her disease was erysipelas, terminating in gangrene of the right hand and arm; that he thought she could turn herself in bed, except that she could not move her right arm; that she could move her head one way and the other, nearly as well as anybody; that if she had desired to do so, he thought she could have turned in bed partly upon her right side.

Two witnesses, the physician and John Marx, testify that they were at this table in the dining-room at the time Mrs. Ambre signed the will; that they saw, from their position at the table, the group around her bed, and saw her, her arms and shoulders, and, as Marx testifies, her head. Margaret Rich,

the daughter ·of Mrs. Ambre, who was attending upon her, testifies that she stood behind the bed of Mrs. Ambre, and, from her position there, saw the attesting witnesses at the table, in the dining-room, while in the act of attesting the will. John Sauter, one of the attesting witnesses, and who drew the will as before named, who had been accustomed to draw wills for twenty years, and had been a justice of the peace for that length of time, testifies that he knew at the time that the witnesses must sign in the presence of the testatrix or the will would be invalid, and that before attesting the will, he looked around to see that the door between the rooms was open; saw that it was open and then attested the will; and says that a line drawn from Mrs. Ambre's head, as she lay in bed, would strike the table somewhere in the centre.

The physician states, that from where Mrs. Ambre lay at the time, by turning her head she could have seen the witnesses. at the table in the dining-room while they were signing the will. The other witnesses named, also add their opinion that she could have so seen.

It is true, all this testimony is not uncontradicted. There is some testimony that the door was closed at the time. But the whole testimony leaves no doubt upon our minds that the door was open. There is conflicting testimony as to Mrs. Ambre's position in bed, as, whether she was lying down or sitting up.

But the chief conflict of testimony is, in the opinions of witnesses, as to whether Mrs. Ambre could have seen the attesting witnesses subscribe their names. A majority in number perhaps of the witnesses testify that she could not.

But there is this important distinction between the opinions of the two classes of witnesses.

The opinions of the witnesses on the part of appellee do not seem to be based upon facts, upon actual observation made at the time, as to the ability of seeing from the position Mrs. · Ambre was in, to that of the attesting witnesses at the table; whereas, the opinions of the witnesses for appellant were based upon the fact that they themselves actually did, at the

time, see and observe from the one position to the other, and we regard the latter witnesses as of a more reliable character than the former.

Without further dwelling upon this conflicting testimony, we will say that, after a consideration of the entire testimony and the surrounding circumstances, we can come to no other conclusion than that the testatrix was in such a situation that she might have seen the attestation.

The cases are very numerous, and not entirely harmonious, in regard to the point what will constitute a sufficient presence of the testator at the time of the attestation by the witnesses.

It is held not to be necessary that the testator and the witnesses should be in the same room, or the same house, at the time of the attestation, in order to constitute actual presence, within the statute. And an attestation taking place even in the same room, if done in a clandestine and fraudulent way, will not be regarded as an attestation in the presence of the testator. It is not necessary that the testator should actually see the witnesses signing. In *Doe* v. *Manifold*, 1 M. & S. 294, Lord ELLENBOROUGH, Ch. J., lays down the rule, that it is "not necessary the devisor should actually see. In favor of attestation, it is presumed if he might see he did see." And when the devisor "cannot by possibility see the act doing, that is out of his presence."

In *Dewey* v. *Dewey*, 1 Metc. 352, the court, on this subject, say: So the provision that the instrument shall be attested by three witnesses, "in the presence" of the testator, has been liberally construed, it being held sufficient evidence of the presence of the testator, if the facts show a possibility of his seeing the witnesses subscribe their names, unless controlled by other evidence, showing that in fact he did not see them, and that, therefore, it was not done in his presence. Redfield, in his treatise on Wills, 248, § 7, in remarking upon the latter portion of the above, as to controlling evidence, says: "But the English cases treat the presumption of the execution being in the presence of the testator, if so that he might have observed

15—74TH ILL.

it, as one not liable to be rebutted by evidence that he did not in fact see it witnessed." We should be quite unwilling to allow evidence that the testator did not in fact see the will witnessed, to have any controlling influence as to the attestation being in his presence. We should regard such a rule one that would be productive of mischief, and in very many cases wrongfully defeat the disposition of property by will. In *Hagan* v. *Grosvenor*, 10 Metc. 56, the court say : " The decisions have been various, but we consider the law as settled, * * * and that all which is required is that the testator shall see their (the witnesses') attestation, or be in a situation where he can see it." We regard it as sufficiently established by the authorities, that if the witnesses to a will, while signing their names thereto as such witnesses, are in such a place that the testator can see them if he chooses, they are to be regarded as in his *presence*, within the meaning of the statute; that it is not necessary that they should be in the same room with the testator, or that he should actually see them sign. In support of the principles above expressed, in addition to the authorities already cited, reference may be had to the following : 1 Redfield on Wills, 245, *et seq.;* *Shires* v. *Glasscock*, 2 Salk. 688; *Davy* v. *Smith*, 3 id. 395; *Todd* v. *Winchelsea*, 2 Car. & P. 488; *Hill* v. *Barge*, 12 Ala. 695; *Nock* v. *Nock*, 10 Gratt. 115 ; *Lamb* v. *Girtman*, 26 Ga. 629; *Wright* v. *Lewis*, 5 Rich. 216; *Watson* v. *Pipes*, 32 Miss. 468; *McElfresh* v. *Guard*, 32 Ind. 412.

Considering that Mrs. Ambre, at the time, was possessed of entire consciousness; that it was at her own request that the witnesses went from the bedroom into the dining-room to attest the will, on account of the want of conveniences for doing so in the bedroom ; that she knew the attestation was going on in the dining-room, and approved it; and, in view of all the other evidence under the legal rules affecting it, we do not hesitate to say, that the proof is very satisfactory that the will was attested in the presence of the testatrix.

As to the question which has been adverted to, of the *effect*

of the will to pass any portion of the property devised, of course that does not come up in this proceeding.

The decree of the court below will be reversed, and the cause remanded for further proceedings.

*Decree reversed.*