In the Matter of the Will of W. F. Storey.

# In the Matter of the Will of Wilbur F. Storey.

1. CHANGE OF VENUE—NAMING JUDGE.—Where the order changing the venue from a judge of the Circuit Court of Cook county, designated a particular judge of such court as the judge to whom the case was to go for trial, and the case was tried by another judge of such court, *held*, that the inserting in the order changing the venue, of the name of a judge to try the cause, was entirely unauthorized and must be treated as mere surplusage (R. S. Ch. 146, § 2) ; that any judge of the court to whom the causes for a change of venue did not apply would have full power and authority to try the case.

2. PROCEEDINGS TO PROBATE A WILL—APPEAL.—In proceedings to probate a will in the probate court there are no parties. The judgment is *in rem*, and unless appealed from is binding on the whole world. On an appeal to the circuit court by any party interested, the judgment entered by that court is a judgment *in rem*. On the trial, those who seek to have the will admitted to probate become proponents, and those who oppose it become contestants. No one can withdraw the cause or stop the proceedings against the objection of any person, on the one side or the other of the issue, who is interested in having the question determined by the court.

3. SAME.—A died October 27, 1884, and on December 5, 1884, there was presented to the Probate Court of Cook county, by the widow of A, a peti-

tion, stating that said A left a last will, which was dated February 1, 1881, in which said widow was named as executrix; that he left real and personal estate in Cook county, and that he left surviving him his said widow and a brother, sister, nephew and niece, his only surviving heirs at law, and praying that said will be admitted to probate. On a day fixed by the court the testimony of the subscribing witnesses to the will was heard, and such testimony being that A was not, at the time of making said will, of sound mind and memory, the court refused to admit the will to probate. From this order two appeals were prayed to the circuit court, one by the widow, who filed her appeal bond December 2, 1884, but did not file a transcript for some time thereafter, and one by the sister, who perfected her appeal by filing a transcript, December 5, 1884. The widow afterward dismissed her appeal and moved the court to dismiss the appeal of the sister, which motion the court denied. The appeal of the sister came on for trial. *Held*, that on such trial the court properly regarded the widow, who was seeking to have probate allowed, as the proponent of the will, and her counsel were properly given the conduct of proponent's side of the issue ; that the refusal of the court to allow the sister, whose interest appeared to be that no will should be established, to dismiss the appeal, was proper.

4. MENTAL CAPACITY.—The court is of opinion that the clear preponderance of the evidence in this case supports the finding of the court below that the testator was, at the time of the execution of the will in question, of sound and disposing mind and memory.

5. EXECUTION OF WILL.—No declaration by the testator that the paper is his will is necessary, nor need the witness know that he is attesting a will, nor is it necessary that the testator should actually see the witnesses sign if he is in such position when they sign that he could see them if he chose so to do. The court is of opinion that under the evidence in this case the execution of the will was duly proved.

6. CROSS-EXAMINATION.—EVIDENCE AS TO FRAUD, COMPULSION, ETC.— Appellant's counsel can not assign for error that he was not permitted on cross-examination of the subscribing witnesses to go into the evidence showing fraud, compulsion or improper conduct. The court below permitted full cross-examination as to everything which took place at the time of the signing of the will by the testator, and at the time of the signing by the witnesses, and that was the proper extent of the cross-examination; and evidence of facts occurring at other times tending to prove such fraud, compulsion or improper practice, was in the nature of affirmative evidence and should be offered when contestants came to make their case.

7. FRAUD TO AVOID A WILL.—Fraud to avoid a will must be directly connected with the execution of the will, and must be such as to deprive the testator of his free agency. The advice or even persuasion of a wife, to induce a will in her favor, is lawful. Weakness and opportunity for fraud or undue influence do not prove that the one has been perpetrated or the other exercised.

8. EVIDENCE—REVIEWING COURT.—Admissibility of the evidence will be considered by a reviewing court only on the ground on which it was offered by counsel in the court below.

In the Matter of the Will of W. F. Storey.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.    Opinion filed August 6, 1886.

Wilbur F. Storey died October 27, 1884, and on December 5, 1884, there was presented to the Probate Court of Cook county, by Eureka C. Storey, his widow, a petition stating that said Wilbur F. Storey left a last will, which was dated February 1, 1881, in which she, said Eureka C. Storey, was named as executrix; that he left real and personal estate in Cook county, and that he left surviving him his said widow, and his brother, Anson L. Storey, his sister, Mary E. Farrand, his nephew, Edwin P. Chapin, and his niece, Mary E. Anderson, his only surviving heirs at law, and praying that said will be admitted to probate.

On a day fixed by the probate court the testimony of the subscribing witnesses to the will was heard, and such testimony being that said Wilbur F. Storey was not, at the time of making said will, of sound mind and memory, the court refused to admit the will to probate.    From this order two appeals were prayed to the circuit court, one by Mrs. Storey, who filed her appeal bond Dec. 2, 1884, but did not file a transcript for some time thereafter, and one by Mrs. Farrand, who perfected her appeal by filing a transcript Dec. 5, 1884.    Mrs. Storey afterward dismissed her appeal and moved the court to dismiss the appeal of Mrs. Farrand, which motion the court denied.    The transcript from the probate court being filed by Mrs. Farrand in the circuit court, her appeal was regularly docketed in that court, and appearance of Anson L. Storey was entered in said appeal.    Said appeal came on for trial on the calendar of Judge Hawes, who was holding one branch of the circuit court, and a petition for change of venue having been filed, an order was entered changing the venue from Judge Hawes to Judge McAllister.    Judge McAllister declined to hear the case, and in regular progress of the circuit court docket it came on for trial before Judge Rogers, of said court.    Appellant Anson L. Storey objected to the case being tried before Judge Rogers, for the reason that Judge McAllister was designated

in the order changing the venue as the judge who should try the case.   This objection was overruled by the court, and thereupon counsel for Mrs. Storey called one of the subscribing witnesses to the stand, when objection was made by the counsel for Mrs. Farrand to Mrs. Storey proceeding as proponent of the will, counsel insisting that Mrs. Farrand, being the appellant in the case, had a right to conduct it as proponent on her own part.

The court, however, allowed Mrs. Storey to proceed as proponent of the will, and permitted her counsel to conduct the case, to establish the will.   After the hearing of the case had progressed some time, Mrs. Farrand moved the court to be allowed to dismiss her appeal, claiming the right to control her own appeal, as in other cases.   The court denied her leave to dismiss the appeal and the case proceeded, and an order was finally entered by the court finding the will propounded and dated Feb. 1, 1881, to be the last will and testament of Wilbur F. Storey, deceased, and directing that it be admitted to probate and recorded as such, and that a copy of the order be certified to the probate court.

From this judgment Anson L. Storey appealed to this court, and numerous errors were assigned by him, and Mrs. Farrand also assigns error in that the court refused to allow her, by her counsel, to conduct the case, but allowed Mrs. Storey to manage it, and to control her, Mrs. Farrand's, appeal, and that the court refused to allow her to dismiss her appeal, and in proceeding to try the case and enter judgment therein, after she, who was sole appellant, had moved to dismiss her appeal.

Mr. W. C. GOUDY, for appellant; that the contestant had the right, on the trial of this appeal, to introduce evidence of fraud, compulsion or other improper conduct, cited Heirs of Critz v. Pierce, 106 Ill. 170.

Mr. JOHN P. ALTGELD, for Mary E. Farrand; that the interested person who prosecutes the appeal to the circuit court becomes in that court the proponent of the will, cited Wells v. Spraggins, 3 Grattan (Va.), 555.

In the Matter of the Will of W. F. Storey.

The jurisdiction of the circuit court in this case is purely appellate, and a party can not acquire a standing in it except by complying with the statute governing appeals: Kennedy v. Pennick, 21 Ill. 597; Ward v. People, 13 Ill. 636; Schooner Constitution v. Woodworth, 1 Scammon, 512.

As to right to dismiss appeal: Lake's Appeal, 32 Conn. 331; Hancock Co. v. Marsh, 2 Scam. 491; Shaffer v. Currier, 13 Ill. 667; Bacon v. Lawrence, 26 Ill. 53.

Messrs. TRUMBULL, WASHBURNE & ROBBINS and Messrs. DEXTER, HERRICK & ALLEN, for appellee; as to proof of execution of a will, cited Dickie v. Carter, 42 Ill. 376; Ambre v. Weishaar, 74 Ill. 109; Yoe v. McCord, 74 Ill. 38; Doran v. Mullen, 78 Ill. 342; Allison v. Allison, 46 Ill. 61; Flinn v. Owen, 58 Ill. 112; Inglesant v. Inglesant, L. R. 3 P. & D. 172; Benton v. Franklin, 9 B. Mon. 28; In re Meurer, 44 Wis. 398; Dyer v. Dyer, 87 Ind. 13; Crowley v. Crowley, 80 Ill. 472; Orser v. Orser, 24 N. Y. 52; Trustees v. Calhoun, 25 N. Y. 425; Thornton v. Thornton, 39 Vt. 152; Cheatham v. Halcher, 30 Grattan, 65; Chambers v. Queen's Proctor, 2 Curtiss, 415; Blake v. Knight, 3 Curtiss, 549; Rugg v. Rugg, 83 N. Y. 594; Matter of Will of Pepoon, 91 N. Y. 258; Tappen v. Davidson, 27 N. J. Eq. 460; Matter of Will of Higgins, 94 N. Y. 557; Peck v. Cary, 38 Barb. 77.

The right of the contestant to introduce evidence of fraud, compulsion or undue influence was not denied, but it was insisted that this is an affirmative issue to be proved by the contestant, and not on cross-examination: Roe v. Taylor, 45 Ill. 492; Critz v. Pierce, 106 Ill. 170.

The admissibility of evidence will be considered by a reviewing court only on the ground on which it was offered by counsel in the court below: Daniels v. Patterson, 3 N. Y. 51; Beard v. Dedolph, 29 Wis. 143; State v. Neville, 6 Jones, 423; Weidler v. Bank, 11 S. & R. 134; Van Buren v. Wells, 19 Wend. 204; Wyngert v. Norton, 4 Mich. 286; Dyson v. State, 26 Miss. 362; Crenshaw v. Davenport, 6 Ala. 390; Baker v. Swan, 32 Md. 355; Winlock v. Hardy, 4 Litt. 272; Follansbee v. Johnson, 28 Minn. 311; Lombard v. Cheever, 3

Gilm. 473; Wilding v. Horner, 50 Ill. 50; Lonergan v. Stewart, 55 Ill. 44.

The undue influence relied on to avoid a will must be connected with its execution: Rutherford v. Morris, 77 Ill. 412; Brownfield v. Brownfield, 43 Ill. 152.

As to the right to dismiss the appeal: Allison v. Smith, 16 Mich. 405; St. John's Lodge v. Collender, 4 Iredell, 335; People v. Frazer, 39 Mich. 198; Bradford v. Andrews, 20 Ohio, 214; Banning v. Kirby, 7 Am. Law Record, 601; Benjamin v. Tell, 11 Iredell, 49; Beuvist v. Murrin, 48 Mo. 52.

MORAN, J. It is more convenient to consider such of the various errors assigned as we deem it necessary or important to discuss, in the order in which they arise in the record, than in the order in which they have been presented by the different counsel in their briefs.

This brings us first to the question whether, in view of the fact that the order changing the venue designated Judge McAllister as the judge to whom the case was to go for trial, Judge Rogers was authorized to try it. Sec. 2 of Chap. 146, R. S., relating to change of venue, is as follows: " When a change of venue is granted it may be to some other court of record of competent jurisdiction, in the same county, or in some other convenient county, to which there is no valid objection; provided that whenever the action is pending in either the Circuit or Superior Court of Cook county, and the only causes for a change of venue apply to one or more but not to all of the judges of such court, the case may be tried before some one of the judges of such court to whom the causes do not apply."

It is apparent that there is no authority in this statute for naming, in the order changing the venue, a particular judge to try the case. The change is not to a particular judge, but it is from the particular judge or judges to whom the causes alleged in the petition are shown to apply. Any judge of the court to whom the causes do not apply has full power and authority to try the case, and the judge on whose calendar it may happen, in the division of the court's business, to be

In the Matter of the Will of W. F. Storey.

placed, the causes not applying to him, is the proper judge ·to hear and determine it. The inserting of the name of a judge to try the cause, then, in the order changing the venue, must be held entirely unauthorized and to be treated as mere surplusage. But there was a further reason why, even if it be assumed that the inserting in the order the name of a judge was proper, the inserting of Judge McAllister's name would have to be regarded as nugatory. By an order of the Supreme Court of the State, duly entered in pursuance of the statute and constitution, and of which the circuit court would take judicial notice, Judge McAllister had been assigned to duty as one of the justices of the Appellate Court for the First District of Illinois, and he was at the time this question arose, engaged in this court in the discharge of such duty. While he was thus engaged it was ·not in the· power of the circuit court to make any order which would assign him to try any case pending in that court, and such order being made was simply void, and could not affect the rights of the parties to the proceeding one way or the other.

Next in order are the alleged errors in giving Mrs. Storey the position of proponent of the will in the trial in the circuit court, and the refusal of the court to dismiss the appeal and end the proceeding, on the motion of counsel for Mrs. Farrand. Whether there was error in these rulings can be best determined by considering what is the nature of a proceeding in the circuit court, on appeal from a judgment of the probate court, allowing or disallowing the probate of a will. The statute, Sec. 2, Chap. 3, makes it the duty of any person knowing that he is named as executor of the last will of any deceased person, to cause such will to be proved in the proper court within thirty days after the death of the testator, or to present the will and declare his refusal to accept the executorship. Another section makes it the duty of any person having possession of a will to file it after the testator's death, in the probate court. When the will is produced to the court, the court has power to compel the attendance of the subscribing witnesses, and may, of its own motion, proceed to the probate of the will.

It is the usual practice for a petition to be filed bringing the death of the testator to the knowledge of the court, and asking that the instrument purporting to be the will be admitted to probate. The person thus asking to have the will probated, has come to be termed the proponent of the will. The proceedings in the probate court may be without any notice, and from the order of the court allowing or disallowing the will to probate, appeals may be taken to the circuit court in the same manner as appeals may be taken from justices of the peace, and the trials of such appeals shall be *de novo.* It is admitted by counsel for Mrs. Farrand, that in the proceeding to prove a will in the probate court there are no parties; that the judgment is *in rem,* and unless' appealed from is binding on the whole world; but counsel contends, with zeal and ingenuity, that when an appeal is taken by one party the proceeding then becomes one *inter partes,* the appellant on one side and the appellees on the other; that none can be appellants except those who have complied with the statute in taking and perfecting an appeal, and that the appellant has, as in the case of an appeal in an ordinary suit, where there is a plaintiff and a defendant, the absolute right to control the appeal. A proceeding *in rem* is a proceeding instituted against a thing and not against a person, and a judgment *in rem* is a judgment or sentence upon or against a thing, determining its condition or status, and the judgment *ipso facto* renders it what it declares it to be. 1 Bouvier Law Dictionary; Woodruff v. Taylor, 20 Vt. 73.

Such is the judgment entered in the probate court, upon the probate of a will. Now, what is the judgment entered in the circuit court on an appeal by any party interested? Is it not also a judgment *in rem?* And if so how can the proceedings be said to be *inter partes?* The judgment is what determines, and it is simply a declaration on the will, and not a judgment for or against appellant or any other person interested. The appeal is the method provided by law by which the circuit court gets jurisdiction to pronounce a judgment in the matter. It is not an appeal for the purpose of reviewing the judgment of the court below, but is a transferring of the

case into a forum where it is to be heard *de novo*, on original evidence, and where evidence may be introduced which is not competent on the hearing in the probate court. The statute gives to any party in interest the right to so transfer the case by appeal, but when once in the circuit court, the party so bringing it into court stands in the same relation to the proceedings as does any other party in interest. The question in the circuit court, as in the probate court, is simply will or no will, and the judgment of the court, when rendered, unless reversed or set aside in some proceeding for that purpose, is binding on all persons, whether in any manner they appear as formal parties on the record or not. On the trial the parties in interest may arrange themselves upon the issue as in favor of, or in opposition to, the probate of the will, and all those who seek to have the will admitted to probate become proponents, and those who oppose it become contestants; but no one can withdraw the cause or stop the proceedings against the objection of any person on the one side or the other of the issue, who is interested in having the question determined by the court.

When the case comes to hearing, those who in good faith seek to have the will admitted to probate have the affirmative of the issue, and therefore by the ordinary rule they are entitled to first produce their evidence to the court. The *onus* is on them, therefore they have the right to begin, and on hearing of this case, Mrs. Storey having assumed the duty which the statute laid upon her as the executrix named in the will, and petitioned the county court to admit it to probate, and standing in the circuit court in good faith seeking to have probate allowed, she was properly regarded by the court as the proponent of the will, and her counsel were properly given the conduct of proponent's side of the issue. Though Mrs. Farrand appealed from the judgment of the probate court, refusing probate of the will, her interest appears to be that no will should be established; that there should be a case of intestacy; and her attitude on the hearing in the court below was consistent with her apparent interest. To have given her counsel the conduct of proponent's case would have been to

commit the proving of an affirmative into the hands of one whose interest and desire it was to have the negative estab-lished. There was then no error in giving to the counsel of Mrs. Storey the control of the case in the circuit court, and no error in refusing to allow Mrs. Farrand to dismiss the appeal. The following authorities are in general support of the view here taken: Tibbatts v. Berry, 10 B. Monroe, 473; Frazer v. Wayne Circuit Judge, 39 Mich. 198; Frazier v. Jennison, 106 M. S. 141; Bradford v. Andrews, 20 Ohio St. 209; Benoist v. Murrin, 48 Mo. 48; St. John's Lodge v. Callender, 4 Iredell's Law, 335; Enloe v. Sherril, 6 Iredell's Law, 212; Banning v. Kirby, 7 Am. Law Record, 601; Benjamin v. Teal, 11 Iredell, 49; apparently *contra*, Lake's Appeal, 32 Conn. 331, and Lan. caster's Appeal, 47 Conn. 248.

We are now brought to consider the propriety of the judg-ment of the circuit court in admitting the will to probate. The subscribing witnesses testified that the testator was not, at the time of the execution of the will, of sound mind and memory. To establish the testator's capacity the proponent called and examined a large number of witnesses who were well acquainted with the testator, and who met him socially and in business, some of them very frequently, and others at intervals but more seldom, during the latter part of 1880 and during the winter, spring and summer of 1881. Among the witnesses were those who had been, during the years 1880 and 1881, in the employ of Mr. Storey on the staff of the Chicago Times in positions of trust and responsibility, the duties of which brought each of them in daily contact with the testator and gave them favorable opportunities for observ-ing his mental condition and business capacity. Those wit-nesses are in accord with all the others called by the propo-nent in stating that Mr. Storey was, at the time of the execu-tion of the will and for many months prior and subsequent to the time of its execution, sound in mind and memory and at-tending to his business with usual intelligence and judgment. The will was dated February 1, 1881, and is shown to have been executed some time in March of that year. A number of letters written by testator between July, 1880, and April,

In the Matter of the Will of W. F. Storey.

1882, are in the record.   Three of these letters were written during the month of March, 1881.

There is nothing in any of these letters, which, in our opinion, would indicate that the person who wrote them was of unsound mind, while some of them, some nearest in date to the time of the execution of the will, bear internal evidence of acuteness, precision, business discrimination and prudence, on the part of the writer.   There is also in the record a report of testimony given by Mr. Storey in the case of Early v. Storey, in which the witness went into the narration of matters occurring some seven years before, and which shows on the part of the witness a clear recollection of the matter as to which he was interrogated, intelligence and discrimination in his answers, and is very far from suggesting mental imbecility or intellectual obscurity or confusion.   It further appears, from the evidence, that testator was at his office in the Times building during the months of January, February and March, 1881, nearly every business day, and that he signed checks during those three months, dated on nearly every business day, in the regular course of business, aggregating $163,000; and that while the checks were made out in the business office of the Times, they were accompanied when they were taken to Mr. Storey for his signature, by a bill or voucher showing the purpose for which the check was drawn; that between December 6, 1880, and April 6, 1881, he signed twenty-four notes amounting to over $125,000, which were either given for money borrowed at the banks or in payment for printing paper.

To support the contention that the testator was not of sound mind, it was shown that in 1878 he suffered a paralytic stroke, which, it was claimed, affected his mind, and from the effects of which he never recovered; and an offer was made to show by the record of the probate court that on August 8, 1884, testator was declared by said court, by an order based on the verdict of a jury, to be a distracted person, but this record was ruled out by the court, as being too remote.   It was shown that for several years prior to his death, testator held the belief that communications could be had with the spirits of

another world, and it is contended that advantage was taken of his credulity in the matter of such spiritual communications by Mrs. Storey and her sister, one Mrs. Rose, to practice imposition upon him. Mrs. Rose pretended, it is said, to have received communications from the spirit of some Indian, who took great interest in the welfare of Mr. Storey. It is shown by references made by said Storey in some of the letters written by him, that he thought himself in receipt of advice, as to some of his matters, from a spirit or individual to whom he alluded as the "little squaw;" that he is receiving treatment for his bodily ailments from the same source, which is greatly benefiting him. His faith in these "little squaw" manifestations and communications, which they regard as a delusion and the result of the imposition alleged, is one of the main facts stated in support of their opinion by the witnesses who testify that the testator was of non-disposing mind.

The lawyer, Alfred S. Trude, who drew the will, and is one of the subscribing witnesses to it, mentions in support of his opinion that the testator was of unsound mind and memory when he signed and executed the will, facts that tend to show that testator's memory was impaired. He would recur frequently to the same subject in apparent forgetfulness that he had given instructions on the matter before; that he caused several contracts to be drafted with regard to the same thing, and seemed oblivious of the fact, on the occasion of giving instruction for such contract, that the prior contracts had been drawn in reference to the same matter. This witness also mentions a belief of testator's that he was the victim of sewer-gas, which belief was based on information obtained from the spirit of "Little Squaw" through Mrs. Rose; that testator was urged by "Little Squaw" to hurry the completion, and at the same dictation changed, in many ways, the plans of the building known as the Storey mansion, the expenditures for the erection of which were, it is argued, out of all proportion to testator's financial ability and not in accordance with prudent business management; that testator was led on to gratify the ambition of Mrs. Storey in this course, and by a conspiracy of Mrs. Storey and her sister and through means of the

In the Matter of the Will of W. F. Storey.

pretended spiritual communications, and that the signing of the will in question was brought about by the same means.

The witness, Patterson, based his opinion on the fact that Mr. Storey's memory seemed defective, and that his mind seemed weak, and he was not as competent as formerly to attend to his business. The other subscribing witness, McLenthen, when asked to state facts on which he based his opinion, mentioned instances indicating absent-mindedness or forgetfulness, such as walking into a room with the idea of saying something and apparently forgetting what it was, and going back without saying anything. There is much in the testimony of these witnesses to lead to the belief that they confused the term *sound* memory with *defective* memory. Sound mind and memory is equivalent to the term sanity, and the mind and memory which is sufficiently sound to constitute testamentary capacity, is the capacity to transact ordinary business. "It is not required that he shall possess a higher capacity for that than for the transaction of the ordinary affairs of life. A man capable of buying and selling property, settling accounts, collecting and paying out money, or borrowing or loaning money, must usually be regarded as capable of making a will." Carpenter v. Calvert, 83 Ill. 62. "The property owner, unless an idiot or lunatic, must be allowed to make his own distribution and disposition of his property; nor does the fact that a party is physically unable to look after his property, or that his mind is enfeebled by age and disease, if not to the point of lunacy or absolute imbecility, take from him this power." Kimball v. Cuddy, Supreme Court, Ill., 6 N. E. Rep. 589. "If the testator was of sound mind but of poor or impaired memory, he was of sound mind and memory, as the phrase is known in law. The failure of memory is not sufficient to create the incapacity, unless it be quite total or extend to his immediate family and property. As known in law, sound memory is something quite different from good or unimpaired memory, in which sense the subscribing witnesses evidently understood it. Failure of memory does not constitute unsoundness of memory." Yoe v. McCord, 74 Ill. 33.

The fact that a man somewhat advanced in years, and suf-

fering from disease, holds the opinion, whether founded on his own imagination or the suggestions of others, that his ailment is due to this or that cause, which opinion is apparently and even demonstrably false, or that one who professes a belief in what is known as spiritualism, may be influenced by and led to give credence to alleged communications from spirits which are, in fact, no communications, but impositions and delusions contrived by designing persons, is very far from sufficient to prove in such person want of testamentary capacity.  Such beliefs, even if whims or delusions, are compatible with disposing minds on the part of those holding them, but such facts are proper to be considered with reference to questions of mental weakness and the susceptibility of the testator to the arts of those who would mislead him for some purpose of their own.

The evidence in this record on the question of mental capacity is very voluminous, and a detailed statement of all the evidence on both sides of that issue in this opinion, would serve no useful purpose.

From the brief resumé made of the main features of the evidence of proponents and contestants, it will be seen that testator was for some months before and after the execution of the will in question, engaged in the transaction of his ordinary business; that about the time of the will and subsequently, he wrote letters relating to important phases of his newspaper business and other matters which exhibit mental clearness, business shrewdness and intelligent discrimination and forethought; that, being placed on the stand by his attorney, one of the subscribing witnesses to the will, shortly after its execution, he testified with clearness and perspicuity in answer to the questions put to him; that a number of witnesses who knew him well, state it as their opinion, that while he was weak and shattered in bodily health, he was mentally clear and sound; that the only witnesses who testify to want of capacity are the subscribing witnesses, who, while it must be admitted that they had intimate relations with the testator, and frequent intercourse with him, and while their truthfulness in stating their opinion need not be questioned, still give their

In the Matter of the Will of W. F. Storey.

opinion in opposition to the fair significance and import of their act in signing the attestation clause.  It is also inconsistent with the general conduct of one, at least, if not of two of said witnesses, toward testator, and others with whom they acted for him and under his instructions, and it is a moderate expression of the doctrine of the authorities on this point, to say that such circumstances must detract largely from the weight which a court would otherwise .be willing to give to the opinion of witnesses having the same opportunities for observation.   Redfield on Wills, p. 96, note 4;  Scribner v. Crane, 2 Paige, Ch. 149;  Garrison v. Garrison, 15 N. J. Eq. 270;  McMakin v. McMakin, 2 Bush (Ky.), 79.

Considering, then, the evidence in this record, in connection with all the facts and circumstances which are proper to be considered in weighing it, and bearing in mind the measure of mental capacity and recollection on the part of a testator which suffices to make a valid will, we think the conclusion reached by the learned judge who tried this case in the court below, that the testator was, at the time of the execution of the will in question, of sound and disposing mind and memory, is supported by the clear preponderance of the evidence.

The next point raised on the record, and the one most strenuously pressed by counsel for appellant, is as to the correctness of the finding that the will in question was duly executed.   To entitle a will to be admitted to probate, four things must concur.   The will must be in writing, and signed by the testator, or in his presence by some one under his direction; it must be attested by two or more credible witnesses; two witnesses must prove that they saw the testator sign the will in their presence, or that he acknowledged the same to be his act and deed, and when the hearing is in the circuit court on appeal, proof must be made by the subscribing witnesses or others that, at the time of execution, the testator was of sound mind and memory.   Dickie v. Carter, 42 Ill. 376.

It was shown in this case that the will was drawn by the attorney of the testator, and that he took it to the house of the testator to be signed.   On his arrival, he found the testator in a somewhat elated state of mind, caused, it is to be in-

ferred, ˙iom drinking an intoxicant which was on the table near at hand. The will was handed to Mrs. Storey, who read, or stated to her husband, the provision thereof about her not marrying again, and then said: "Now, Wilbur, sign this. You know what the little squaw has said about making provision for those you love best; and you know I love you and you know you love me best." Testator thereupon took up a pen and signed the will. The will was left by the attorney at the house of the testator, and afterward it came to his possession from the hands of Mrs. Storey, and about a month after the signing, the attorney took the will, together with an antenuptial contract, to the business office of the testator in the Times building, where he found Mr. Storey, and after transacting some other business with him, the attorney produced the will and requested the testator to call some of the editorial writers or persons connected with his newspaper to come and sign the paper.

Testator thereupon communicated, through some contrivance provided for that purpose, with the business office, and within a few moments, in reply to his summons, Patterson, the business manager of the Times, entered the room. The will was either in the hand of attorney Trude or was lying on the desk and the testator was sitting in front of the desk, and when Patterson came in, the attorney said to him, "I want you to sign this paper," or "I want you to sign as a witness," or "I want you to witness this signature." Patterson thereupon signed the paper, placing it for the purpose of writing his name, on the top of the pigeon holes at the end of the desk. Thereupon Trude signed the paper and then said, "We might have another witness," or "You get another witness," and Patterson went out in the hall and called in McLenthen, and the attorney said to him, "Sign this," or "Sign here," indicating the will. During all this time testator was sitting at his desk within three or four feet of the subscribing witnesses when they wrote their names, and McLenthen states that he wrote his name within reach of Mr. Storey's arm, if he leaned forward in his chair. Testator sat in a listless attitude in his chair, and did not look at the witnesses when they signed, said

In the Matter of the Will of W. F. Storey.

nothing to the witnesses, but after the signing by them, he took the will and the ante-nuptial contract and folded them together and handed them to Patterson, saying: "Take those and take care of them for me."

Testator's knowledge that there was a will and of its contents, is inferable from the evidence. It appears that the will in question is substantially the same, in its provisions, as a will of prior date, which was introduced in evidence, and which was shown to be in Storey's handwriting, and Judge L. B. Otis testified that in the spring of 1881, testator told him, in a conversation which took place between them, that he had made a will; that Mr. Trude had drawn it; that theretofore he had drawn his own wills and could draw a will as well as any one, but this one Trude had drawn. He mentioned the witnesses, and Otis recalled Patterson as one that he named. We understand from the testimony of Trude, that he stated or read some portion of the contents of the will to the testator when he brought it to testator's room to have it signed by the subscribing witnesses. It also appears that at the time testator handed the will together with the ante-nuptial contract to Patterson to take care of them, there was indorsed upon the will in the handwriting of testator, "Will, etc., W. F. S."

Considering this evidence in the light of the conclusion which we have reached from the record, that at the time of the signing of this will by the testator, and at the time of the signing by the subscribing witnesses, testator was of sound mind and memory, and therefore necessarily had an understanding of the nature of the business in which he was engaged and discretion to comprehend and transact it intelligently, and applying the rules of the statute for the execution of wills as interpreted by various decisions of the Supreme Court, we are led to the conclusion that the execution of this will was duly proven. The request of testator's attorney, made to the other witnesses in his presence, to sign the paper, without dissent by him, was in law testator's request to them to sign it.

Having it thus signed in his presence, and delivering it to

Patterson for safe keeping, in the presence of Trude, with the word "Will" written on it with his own hand, Patterson having seen testator's signature upon it when he signed it as a witness, was, under the circumstances, a sufficient acknowledgment of the will to Patterson, and the witness Trude saw the testator sign it, and himself signed it as a witness in testator's presence. This was sufficient; no declaration by the testator that the paper is his will is necessary, nor need the witness know that he is attesting a will, nor is it necessary that the testator should actually see the witnesses sign if he is in such position when they sign that he could see them if he chose so to do. Allison v. Allison, 46 Ill. 61; Yoe v. McCord, 74 I". 38; Doran v. Mullen, 78 Ill. 342; Flinn v. Owen, 58.Ill. 112; Dickie v. Carter, 42 Ill. 346; Ambre v. Weishaar, 74 Ill. 109; Peck v. Gay, 38 Barb. 78; Benton v. Franklin, 9 B. Mon. 28; Inglesant v. Inglesant, L. R. 3 P. & D. 172.

It need not be shown that the testator knew at the time of the execution the entire contents of the will. That he knew the contents is to be presumed from his signature; and the certificate of attestation, signed by the witnesses, is entitled to much weight when their testimony contradicts it after the lapse of five years. Yoe v. McCord, *supra;* Oser v. Oser, 24 N. Y. 52; Matter of Will of Pepoon, 91 N. Y. 258.

Counsel for appellant complains that he was not permitted, on cross-examination of the subscribing witnesses, to go into the evidence showing fraud, compulsion or improper conduct. The court below permitted full cross-examination as to every thing which took place at the time of the signing of the will by the testator, and at the time of the signing by the witnesses. In our opinion that was the proper extent of the cross-examination, and evidence of facts occurring at other times tending to prove such fraud, compulsion or improper practice, was in the nature of affirmative evidence, and should be offered when contestants came to make their case.

The contestants, after proponent had closed, offered to prove, that during the first six months of 1881 Mr. Storey was not of sound mind and memory; that he had no testamentary capacity. The offer was objected to and ruled out by the

In the Matter of the Will of W. F. Storey.

court. The next day, as appears from the record, counsel directed the attention of the court to the general offer made and ruled upon the day before, and, as he stated, so as surely to save the point, on the ruling in the record, called a witness and asked him to state what was the condition of Mr. Storey's mind in March and April, 1881, and what was the condition of his memory, and to state generally what, at that time, was the condition of Mr. Storey's mental faculties. Objections were made and sustained to these questions, the court understanding them to refer to the offer already ruled on, to wit, the question as to whether testator was of sound mind and memory.

Counsel now contends that the court erred in sustaining the objection, as the evidence was competent to show that the testator had become weak in will and impaired in memory, and was therefore an easy prey to fraud, compulsion and improper conduct. We agree with counsel that the questions asked were proper to show that testator's mind was weakened and enfeebled to such a degree as to make him an easier victim of undue influence or other fraud or improper conduct; but from the counsel's offer and statement in the court below, and from the statements of the court as preserved in the record, we think it clear that the testimony must be held to have been offered in the court below only for the purpose of proving that testator was not of sound mind and memory, and in that view, and in that alone, the court ruled upon it. If counsel had a different purpose in view he should have announced it to the court, and, having failed to do so, the sustaining of the objection can not be urged for error here.

Moreover, there is no evidence in this case going to show fraud, compulsion or improper practice. Such fraud, to avail, must be directly connected with the execution of the will, and must be such as to deprive the testator of his free agency; and the advice or even persuasion of a wife, to induce a will in her favor, is lawful. Yoe v. McCord, *supra;* Rutherford v. Morris, 77 Ill. 412.

Counsel did not offer to introduce evidence showing such fraud or improper practice when he put his question as to

mental capacity, and even if weakness of mind existed and was proved, it would be immaterial, unless there was proof of fraud. Weakness and opportunity for fraud or undue influence does not prove that the one has been perpetrated or the other exercised. It is admitted by counsel, that under the rule in Critz v. Peirce, 106 Ill. 167, the evidence was not admissible for the purpose for which we hold it to have been offered; and it is settled, by abundant authority, that the admissibility of the evidence will be considered by a reviewing court only on the ground on which it was offered by counsel in the court below. Daniels v. Patterson, 3 N. Y. 51; Beard v. Dedolph, 29 Wis. 143; State v. Neville, 6 Jones' Law, 423; Weidler v. Bank, 11 S. & R. 134; Wyngert v. Norton, 4 Mich. 286.

There are other errors assigned which we do not deem it necessary to discuss further than to say that, in our opinion, they can not be sustained.

The probate of a will, under our statute, is in a certain degree a summary proceeding, and the inquiry is confined by the law in such manner as to indicate that the policy of the statute is best carried out by a liberal course in the courts in sustaining probate of a will, if the requirements as to proof of execution appear to have been fulfilled.

If the contestants have meritorious grounds on which to contest the validity of this will, they will find a more adequate forum in a court of chancery, where the inquiry is not narrowed by the limits imposed by the statute on parties contesting the probate of a will; and in such proceeding they will be in no manner concluded by the results of this case in this court or elsewhere.

Upon most patient and careful examination, we find no error in the record, and the judgment of the circuit court will therefore be affirmed.

Judgment affirmed.