FREDDIE T. WITT, by his guardian,

*v.*

CHRISTOPHER J. GARDINER *et al.*

*Filed at Springfield October 14, 1895.*

1. WILLS—*what constitutes the "presence" of a testator.* Contiguity, with an uninterrupted view between the testator and the subscribing witnesses, is the indispensable element to a signing in the testator's *presence.*

2. SAME—*signing in another room, out of testator's sight, not sufficient.* A will is not sufficiently signed by the attesting witnesses "in the presence" of a testatrix sick and confined to her bed, by signing it in a room other than that in which she lies, out of her direct vision, although she might have seen by leaning out of the bed or by getting up and going to the door.

APPEAL from the Circuit Court of Greene county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

THOMAS HENSHAW, and J. M. RIGGS, for appellant:

The true test, as asserted in the English cases, is, not whether the testator saw the witnesses sign, but whether he might have seen them sign, considering his mental

and physical condition and his posture at the time of the subscription.   Schouler on Wills, sec. 341.

The American rule adopts in the main the distinctions of the English cases.   Schouler on Wills, sec. 342.

It was not enough that in another part of the same room the testator might have perceived the witnesses, if in his actual position he could not.   1 Jarman on Wills, (5th Am. ed.) 223.

The testator must be in such a position that he may see.   But if change of position is necessary to see, it is void.   *Russell* v. *Falls*, 3 H. & McH. 457; 2 Greenleaf on Evidence, (10th ed.) sec. 678, note 6.

It will never do to hold that because a testator may change his situation, or cause it to be done, or remove any intervening obstruction, (without doing either,) and thereby might have seen the attestation, it will suffice. *Reed* v. *Roberts*, 26 Ga. 294.

There must be an actual presence; the witnesses must be within the view of the testator; there must be no intervening impediment to prevent his seeing.   But the cases do not require it to be proved that he actually did see.   It is enough if, from the position in which he was, he could have seen them subscribe.   *Ray* v. *Hill*, 3 Strob. 297.

The second section of our Statute of Wills has been construed to mean that the attestation must be in the "actual and personal presence" of testator.   *Greene* v. *Greene*, 145 Ill. 273.

HENRY T. RAINEY, for appellees:

It is not necessary that the testator should actually see the witnesses sign, if he is in such a position when they sign that he can see them if he chooses to do so. *Allison* v. *Allison*, 46 Ill. 61; *Yoe* v. *McCord*, 74 id. 38; *Doran* v. *Mullen*, 78 id. 342; *Finn* v. *Owen*, 58 id. 112; *Peck* v. *Gay*, 38 Barb. 78; *Dickie* v. *Carter*, 42 Ill. 376; *In the matter of Story*, 20 Ill. App. 100; *Gallagher* v. *Kilkeary*, 29 id. 420.

The subscription is not invalidated by not having been performed in the same room, nor even in the same house, provided it took place within the testator's range of vision, as in the case where witnesses left the testator, who lay in bed in one room, and subscribed their names at a table in another room and in sight through a passage, the doors between being thrown open. Schouler on Wills, (2d ed.) 341.

There is no need of showing that he actually saw the witnesses subscribe their names. Schouler on Wills, (2d ed.) 242.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a bill in chancery, brought by Freddie T. Witt, by his guardian, against Christopher J. Gardiner and others, to contest the will of Elizabeth Gardiner, deceased. The will was executed January 23, 1892, and the testatrix died March 1, 1894, leaving the complainant, her grandson and only heir-at-law, and being at the time of her death the owner and in possession of certain parcels of real estate, and also owning other property of the aggregate value of several thousand dollars. After the death of the testatrix the will was filed in the county court for probate, but probate thereof was there denied. On appeal by the proponents to the circuit court a hearing was had *de novo*, resulting in an order admitting the will to probate, and the complainant thereupon filed this bill.

No question is raised by the bill as to the testamentary capacity of the testatrix, nor is there any charge that the execution of the will was procured by undue influence, the grounds upon which its validity is called in question being, first, that it was not signed by the attesting witnesses in the presence of the testatrix; and second, that the testatrix did not know the contents of the will at the time she executed it.

The facts appearing from the record are briefly these: Elizabeth Gardiner, at the time the will was executed, was a woman about eighty years of age, was partially deaf, and was then confined to her bed by sickness and under a physician's care, and had been so for about a month. During that time her physician had been visiting her twice a day, and her condition had required the attendance of watchers each night. On the day the paper was executed, Christopher J. Gardiner called upon her, and after having her attendants all leave the room, held a consultation with her and then left the house. Later the same day he returned, bringing with him the will drawn up, and also bringing R. W. Greene and L. L. Roberts to serve as attesting witnesses. When they entered her room she was informed that the persons named were there to witness her will, and to that she assented. Christopher J. Gardiner then produced the draft of the will, with the testatrix's name already written at the bottom of it, and she, being propped up on pillows on her bed for the purpose, executed the instrument by making her mark, whereupon the two witnesses and Christopher J. Gardiner left the bed-room, which was situated in the rear of the northerly part of the house, and went into the front room, situated on the southerly side of the house, adjoining the bed-room and communicating with it by a door, which was left standing open, and went to a table standing in the front room and there signed their names to the will as attesting witnesses.

There is very considerable conflict in the evidence as to the place in the front room where the table was standing when the will was attested, the testimony of some of the witnesses tending to show that it was standing near the center of the room,—a place which was within the range of the testatrix's vision as she was lying on her bed,—while the testimony of other witnesses tends to show that it was standing at the east side of the room, near a window, and where, as much of the testimony tends

to show, it could not be seen from the place where the testatrix was lying, the partition between the two rooms intervening.

The proponents of the will attempted to show that the attestation, though made in another room than the one in which the testatrix was lying at the time, was in fact made in her presence, by attempting to show (1) that the table on which the attestation occurred stood in the center of the front room, or (2) that even if it stood on the east side of the room she could have seen the act of attestation by changing her position and leaning over out of the bed, or (3) if she could not have seen the act by so leaning over it was possible for her to have arisen from her bed and gone to the door leading to the front room and viewed the act from that position, and this being true, that the attestation was good without proof that she did get out of her bed and saw it. Each of these several positions seems to have been urged to the jury by the proponents of the will, and evidence was given tending to show that the testatrix had sufficient strength to have made it physically possible for her, though very sick, to have arisen from her bed and gone to the door leading to the adjoining room. There was no evidence, however, that she in fact got out of bed or changed her position in the least during the time the will was being attested.

Such being the evidence, the court, at the instance of the proponents, gave to the jury, among other instructions, the following:

25. "The court instructs the jury, for the proponents, that although the jury may believe, from the evidence, that the attesting witnesses went to an adjoining room to a table to sign their names as attesting witnesses, and that the testatrix did not actually see them sign the same, yet if the jury believe, from all the evidence and circumstances proven, that it was within the physical power of the testatrix to have seen them sign the same if she had

so desired, then, in law, the attesting would be in compliance with the law, although the testatrix may not have actually witnessed the signing of the names of the witnesses."

10. "You are further instructed, that if you believe, from the evidence, that at the time the witnesses signed the will in evidence the said Elizabeth Gardiner, if she had desired to do so, was physically able, by turning her head or changing her position, to have seen them sign, then you are instructed that the attestation of the will in evidence was legally accomplished in the presence of the testatrix, as the law requires."

8. "The jury are instructed, that if you find, from the evidence, that the witnesses signed the will in such a place that the testatrix could have seen them sign if she so desired, then you are instructed that the said will was, under the law, attested in the presence of the testatrix, and it makes no difference whether she actually saw them sign or not."

By the provisions of the statute all wills, to be entitled to probate, must be "attested, in the presence of the testator or testatrix, by two or more credible witnesses." (Rev. Stat. chap. 148, sec. 2.) The issue of fact submitted to the jury in this case was whether the attestation was in the presence of the testatrix.

What constitutes the "presence" of a testator or testatrix, within the meaning of the statute, has been made the subject of much discussion by the courts, but the rule supported by the weight of authority may be stated substantially in the language of a distinguished modern law writer as follows: Contiguity, with an uninterrupted view between testator and subscribing witnesses, is the indispensable element to the physical signing in the testator's presence. The subscription is not invalidated by not having been performed in the same room, or even in the same house, provided it took place within the testator's range of vision, as in case where witnesses left the tes-

tator, who lay in bed in one room, and subscribed their names at a table in another room opposite, and in sight, through a passage, the doors being thrown open; or where a lobby intervened, but the testator might have seen the subscription made in a gallery through the lobby and a broken glass window; or where the testatrix sat in her carriage, and the will was attested in the attorney's office, but not out of her sight. In all such cases the attestation is held good, on the theory that the testator might at least have seen the signing, considering his position and the state of his health at the time of the transaction; and it is deemed immaterial that he did not see when he might have done so, for the act, being done in his presence, could not have been vitiated by his turning and looking away. On the other hand, no mere contiguity to the witnesses will constitute a "presence" with the act, if the testator's position be such that he can not possibly see them sign, as where, for instance, he occupies his bed chamber and the witnesses subscribe in an outer hall, where they are necessarily hidden from sight by an intervening flight of stairs, or where his position, which he can not readily change, is such that the witnesses are in reality out of sight. If the subscription is made in an adjoining room, with the door closed, it is not enough that the testator might have seen it had the door stood open; nor will even a subscription in the room he occupies suffice, provided that from his actual position he could not have seen it done. But unless some material obstacle obstructs the vision we here suppose that the testator is sick and feeble, propped up in bed, and requiring some aid in order to bring him into a right position, in which case, of course, his disability is an important factor in determining whether or not he might have seen the witnesses subscribe. Thus, the will of one who lay in bed with the curtains drawn while the will was attested in front of him was admitted to probate, because he might easily have seen the act by pushing the curtain

aside; but that of another was refused probate under like circumstances, upon the distinction that the testatrix was not only too weak to open the curtain herself, but lay helplessly with her back to the witnesses. In fine, the true test, as asserted by the English cases is, not whether the testator saw the witnesses sign, but whether he might have seen them sign, considering his mental condition and his posture at the time of the subcription. (Schouler on Wills, sec. 341.) The same author further says: "Indeed, to speak generally, if the testator be ill, unable to change his position readily for himself, or confined to his bed, his posture at the time of the attestation should be such as to enable him to perceive his witnesses subscribe; and ability to perceive is here construed with some reference to his physical condition at the time of subscription. But if, while the attesting witnesses are subscribing, the testator, conscious of the act, is in an adjoining room, where, by the mere act of volition, he can witness the attestation, this constitutes a subscription in his presence." Ibid. sec. 342.

In *Reed* v. *Roberts*, 26 Ga. 294, where the testator was *in extremis*, and feeble from age and disease, and racked with bodily pain, it was held that to make the attestation sufficient, under the statute, the testator's position should be such as to enable him, without change of situation, to see the witnesses subscribe. In the opinion the court say: "The object of the law can only be effectuated when the testator is so situated, both as to the will and the witnesses, that he may, if he chooses, see both, in the act of attestation. And it is wholly immaterial whether the attestation be in the same room or in a different room. The rule is the same in both. The will and the witnesses must be in the presence of the testator. He ought to be able, without an effort or change of position, to see both." See, also, *Reynolds* v. *Reynolds*, 1 Spear, 253; *Ray* v. *Hill*, 3 Strob. 297; *Ambre* v. *Weishaar*, 74 Ill. 109.

We think it plain that the instructions above recited, and especially the one marked 25, laid down an erroneous. rule, and one which was likely to mislead the jury. This is especially so in view of the testimony of the testatrix's physician that she was physically capable of getting out of bed and going to the door of her bed-room, although her doing so would have been perilous and against his express orders, and also in view of the contention made by the proponents of the will before the jury, that she might have leaned over the front of her bed, or even got up from her bed and gone to the door of her room, and thus seen her witnesses attest the will. That instruction holds, in terms, that if it was within her physical power to see them sign the will the signing must be deemed to have been in her presence. The jury were likely to understand this instruction as holding, that if it was within her physical power to get out of bed and go to the door the attestation was in compliance with the law. Such, clearly, is not the rule. It is doubtful whether it would have been the rule if the testatrix had been in good health.. It can scarcely be said, we think, that because a testator in health has the physical ability to follow his witnesses wherever they may choose to go, and so be present at the attestation of his will, an attestation other than in his actual presence will answer the requirements of the statute. And certainly when a testatrix, as in this case, is sick and confined to her bed, and though physically capable of arising from her bed and walking to the door of an adjacent room is able to do so only with great difficulty and perhaps with peril to her life, it will not be said that an attestation which can be seen by her only in that manner took place in her presence.

Substantially the same criticism may be made upon the instruction marked 10. That instruction held, that if the testatrix was physically able, by turning her head or changing her position, to see the witnesses sign, the

attestation was in her presence. It having been contended by counsel that she might have seen the attestation by leaning out of bed or by getting up and going to the door of the adjoining room, and the evidence tending to show that she was physically able to make such change in her position, the instruction may have been, and probably was, understood by the jury as holding that if she was physically capable of making such change of position, and thereby seeing the attestation, the will was, in contemplation of law, attested in her presence.

The eighth instruction would perhaps have been unobjectionable had it not been for the theory upon which the case was presented to the jury, but in view of that theory, and of the other instructions given, it also was likely to mislead. It held that if the witnesses signed the will in such place that the testatrix could have seen them sign if she had so desired, the attestation was in her presence. In view of the contention that she could have seen them sign by leaning out over the front of the bed or by getting up and going to the door, the jury were likely to understand the instruction as holding that if she could have seen the act of signing in either of those ways the attestation was in her presence. The instruction, under the circumstances, should have been modified, so as to hold that if she could have seen the witnesses sign from the place where she was then lying, the attestation was in her presence.

It is claimed that the error in those instructions was cured by other instructions given. Two instructions were given at the instance of the proponents, which held, in substance, that if the table on which the witnesses signed the will was in such position that it could have been seen by the testatrix from the position she occupied on the bed in the adjoining room, the attestation was in her presence. There is nothing in those instructions in any degree inconsistent with the ones we have criticised, and we are unable to see how the erroneous instructions could have

been thereby cured.   No instruction was given for either party which held that if it was necessary for the testatrix to lean out over the front of her bed or to get up and go to the door in order to see the witnesses sign, the attestation was not in her presence.

For the errors pointed out in the foregoing instructions the decree of the court below finding the will in question to be the last will of the testatrix will be reversed, and the cause will be remanded to the circuit court for a new trial.    *Reversed and remanded.*