## Lake Street Elevated Railroad Company v. Sarah J. Sandy, Executrix.

### Gen. No. 13,367.

1. NEGLIGENCE—*when question of, should be submitted to jury.* The question of negligence should be submitted to a jury where, upon the consideration of the evidence, all reasonable men would not agree.

2. VERDICT—*when not excessive.* A verdict reduced by *remittitur* to $9,000, rendered in an action for personal injuries, is not excessive where it appears that permanent effects followed the injury, and that such effects consisted, among other things, of the impairment of the nerves, diabetes, neuritis, neurasthenia and injury to the cervical vertebrae.

3. HYPOTHETICAL QUESTION—*when objection to form of, waived.* An objection to the form of a hypothetical question in that it invaded the province of the jury is waived by not specifically objecting in the trial court upon that ground.

4. HYPOTHETICAL QUESTION—*what not inappropriate form of.* A hypothetical question is not improperly framed where it concludes as follows: "Now, taking all these conditions and history of the accident into consideration, do you see any connection between the accident and the condition of neuritis following the accident from which the gentleman suffered?"

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Affirmed. Opinion filed November 22, 1907.

**Statement by the Court.** A judgment was entered in the Circuit Court on March 6, 1906, in a suit insti-

tuted by Alfred C. Sandy in his lifetime against appellant to recover damages for personal injuries which he claimed he had sustained as a result of the negligence of appellant.

The evidence tends to show that appellant's line of railroad at the time of the accident extended from what is known as the Union Loop in Chicago westwardly on Lake street through the city to Austin, which was immediately west of the then city limits. Sandy became a passenger upon one of appellant's trains at a station known as Central avenue in Austin, on November 19, 1901, at about 7:30 o'clock in the morning. On that morning the entire city was enveloped in a dense fog which lasted from daylight until about nine o'clock. During this time trains on the streets and elevated railroads were operated with the greatest difficulty. While the fog was uniformly thick, banks of fog arose from time to time, through which it was impossible to see any distance ahead. On account of these conditions, appellant's superintendent ordered the train dispatchers at both ends of the line to notify all trainmen to be very careful in the operation of their trains. He also ordered the ticket agents located at the station to notify the train crews. of the interval between their train and the next train ahead; he saw that each train crew had their headlights and tail-lights displayed and burning, and personally gave orders to each train crew to disregard their running time and to operate their trains so that they could stop within the range of their vision. Other measures also were adopted to assist in signalling and warning the trains.

The train in which Sandy was riding had stopped at a point just west of the Ann street station to allow the preceding train, which was taking on passengers at that station, to proceed. While so standing, and while enveloped by a dense bank of fog, a train moving slowly, it is said, came up and collided with the rear car in which Sandy was riding, and by the force

of the collision Sandy was thrown down between the seats and the wreckage fell upon him and he was injured.

The jury returned a verdict finding appellant guilty and assessing damages at $12,500. On the motion for a new trial the court required the plaintiff to remit $3,500, which was done and a judgment was rendered for $9,000.

CLARENCE A. KNIGHT and WILLIAM G. ADAMS, for appellant.

FRAZIER & ZIV and HIRAM BLAISDELL, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

At the close of appellee's evidence and again at the close of all the evidence, appellant moved the court to instruct the jury to return a verdict for the defendant. The court denied both motions, and error is assigned upon the rulings. Appellant's contention is that the question whether appellant was guilty of a want of that care which, under the law, it was obliged to exercise, is a question of law, because upon a consideration of the facts all reasonable minds will agree that appellant at the time of the collision was doing all it could reasonably do, consistent with the practical operation of its railroad, to avoid the collision.

The case went to the jury upon the first count of the original declaration, and upon the first and fifth additional counts. All other counts were withdrawn. The first count of the original declaration and the first additional count averred negligence generally in the management and operation of the two trains. The fifth additional count alleged negligence in the operation of the train which caused the collision at an unsafe and reckless rate of speed.

The evidence is very voluminous, covering over eight hundred typewritten pages of the record. It is

therefore manifestly impossible for us to discuss it in detail within the reasonable limits of an opinion.

The evidence shows that a dense fog enveloped the trains at the time of the collision; and as one of the consequences of the fog the rails were wet and slippery, making it more difficult to stop the trains. In consequence of the conditions prevailing that morning, extraordinary precautions were adopted by the superintendent of appellant in running the trains, and had his orders been observed and followed it is probable that the collision would not have occurred. It appears, however, from the evidence that the train causing the collision was running at a rate of speed which made it impossible to stop the train within the range of vision, and that when the car in which Sandy was sitting came into view through the fog the motorman, by the use of all the appliances at his disposal, was unable to bring his train to a stop before it collided with the car. Not only was the motorman unable to stop his train fully, but he was unable to reduce its speed to any considerable extent, for the violence of the collision shown by its effects upon the cars of both trains indicates, and justifies the conclusion, that the train was moving at a negligent rate of speed when the collision occurred. The force of the collision was such that the motor car was practically destroyed, both platforms of the car in which Sandy was riding and also the rear platform of the next car in front were taken off, and the floor and seats of the car in which Sandy was riding were torn up.

Upon the consideration of the evidence we do not think that all reasonable minds will agree that appellant was doing all it could reasonably do, consistent with the practical operation of its road, to avoid the collision; and therefore, the negligence of appellant was not a question of law. It was a question of fact for the jury, and the trial court did not err in refusing to instruct the jury as requested. On the contrary, the evidence made a *prima facie* case against

appellant on the question of liability. Elgin, A. & S. Traction Co. v. Wilson, 217 Ill. 47, 51; Chicago City Ry. Co. v. Barker, 209 *id.* 321, 328; Gleeson v. Virginia Midland R. R. Co., 140 U. S. 435, 443; I. C. R. R. Co. v. O'Connell, 160 Ill. 636.

We think the jurors as reasonable men, upon consideration of all the evidence, and under proper instructions of the court, might find not only that the facts made a *prima facie* case of negligent failure on the part of appellant as a carrier of passengers to discharge the duty it owed to Sandy, its passenger, and entitled him to recover damages for the injuries sustained by him, but that appellant did not prove that the injury resulted from inevitable accident or from some cause against which human prudence and foresight could not have provided. The verdict is not clearly and palpably against the weight of the evidence.

The evidence tends to show that Sandy was thrown by the concussion of the cars out of his seat upon his hands and knees on the floor of the car and was thrown back over the seats partly on his back. The wreck struck his back. In addition to an injured knee, his cervical vertebræ was injured and displaced, and according to the testimony of medical experts this impaired certain nerves and diabetes, neuritis and neurasthenia resulted. The evidence of the medical experts offered by appellant tends to show that these results could not have followed from, or been caused by the injury received in the collision in question. The evidence is conflicting. It was a question for the jury to decide, under proper instructions, what the physical results of the accident were and what ailments of Sandy, if any, were not so caused. Ill. Cent. R. R. Co. v. Smith, 208 Ill. 608, 617. We cannot say that the damages assessed by the jury are clearly and palpably against the weight of the evidence.

We have examined with care the instructions given by the court at the request of the plaintiff, and have

considered the objections to them urged in behalf of appellant. We find no reversible error in the instructions as applied to the evidence in this case.

The plaintiff's counsel propounded a hypothetical question to Dr. Ullerick, and the same question to all his medical experts except Dr. Morris. The question assumes as facts many things which were testified to by the plaintiff and certain facts testified to by the attending and examining physicians and concluded as follows:

"Now, taking all these conditions and history of the accident into consideration, do you see any connection between the accident and the condition of neuritis following the accident from which the gentleman suffered?"

Some of the questions were not in the above language precisely, but were the same in substance. The objection urged is that these questions were incompetent because they called for an opinion on the very question which was to be determined by the jury.

In our opinion, counsel for appellant have waived the right to question the correctness of the hypothetical questions now complained of upon the ground stated. The objections to the questions were based on other grounds. No objections were made to the trial court which called the attention of that court to the point that the questions invaded the province of the jury. In W. W. Ry. Co. v. Friedman, 41 Ill. App. 270, it was said, at page 275:

"Even matters of substance may be waived by putting, at the trial, the claim or objection upon a special ground, and thereby directing the attention of the court away from them. In re Story, 20 Ill. App. 183; Sullivan v. People, 122 Ill. 385; C. & E. R. R. Co. v. Holland, 122 Ill. 461. * * *

'Material, incompetent evidence, excepted to, is not error if objected to on special grounds other than the right one. When specific objections are made to the

admission of testimony, none of which are tenable, other objections must be regarded as waived.' Wickenkamp v. Wickenkamp, 77 Ill. 92." To the same effect is C. & E. I. R. R. Co. v. Wallace, 202 Ill. 129.

In Chicago City Ry. Co. v. Bundy, 210 Ill. 39, it was held, at page 46: "These objections, made in the trial court, were not sufficiently specific to sustain the special objection here sought to be raised. In other words, the attempt is to raise a specific objection for the first time in this court."

We think, however, that under the rule stated in the recent case of City of Chicago v. Didier, 227 Ill. 571, 575, 576, the questions complained of were proper. There is no controversy of fact in this case as to the manner in which the injuries were received. It was therefore competent to ask the medical experts whether the physical conditions of Sandy were the results of the injuries complained of. Where the manner in which the injuries were received is denied, a different rule prevails in this jurisdiction.

It is urged that the court erred in the exclusion of evidence offered by appellant.

Dr. Morris, one of plaintiff's witnesses, testified that he had made a critical examination of the plaintiff's spine and that he found the fourth and fifth cervical packed together, out of normal; and that he attributed plaintiff's general physical condition to this deviation of the spine. Appellant's contention on the trial was that it was impossible for the vertebræ to become packed together by any such blows as were received by the plaintiff in the collision in question. Dr. Doane was asked the following question:

"What would be necessary, doctor, to drive together two of these cervical vertebræ so as to make them remain together abnormally?"

Upon objection by plaintiff's counsel that there was no evidence that the plaintiff's vertebræ were driven together or that they remained driven together permanently, the question was ruled out.

We think the question was proper and the witness should have been permitted to answer it. The error, however, was not prejudicial, for the reason that the witness subsequently testified that these cervical vertebræ can be displaced by force, and Doctors Small and Leaming testified on this subject at the instance of appellant.

The court correctly excluded evidence offered by appellant to show the effect of the condition of the atmosphere upon the operation of trains over other roads, and that there were many collisions on other railroads, due to the condition of the atmosphere and fog. The offer made on behalf of appellant that in the exercise of the highest degree of care consistent with the practical operation of the road, it was impossible for this company to operate its trains that morning without collision, as stated in argument, proves too much, for, if true, appellant was guilty of negligence in attempting to operate its trains. We do not think the evidence offered was competent to prove that the collision in question was the result of an inevitable accident.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*