ANNA C. DONOVAN v. TILDEN PRODUCE COMPANY.[1]

December 10, 1915.

Nos. 19,477—(127).

**Negligence of servant.**

1. In this action for damages, caused by the alleged negligence of defendant's servant in opening a refrigerator door while plaintiff was in a stooping posture underneath, the act of opening the door, although in itself proper and properly done, might, nevertheless, be found negligent when considered with relation to the position occupied by plaintiff and the duty of defendant's servant to anticipate what movements plaintiff might reasonably be expected to make; and the jury's finding of negligence cannot be disturbed.

**Contributory negligence.**

2. The evidence does not show contributory negligence as a matter of law.

**Question for jury.**

3. Whether defendant's servant was acting within the scope of his employment when plaintiff was injured, was for the jury.

**Damages excessive.**

4. The damages are excessive inasmuch as one of the chief ailments, for which plaintiff claimed compensation, appears upon this record to have afflicted her long prior to the accident.

Action in the district court for Ramsey county to recover $20,000 for personal injury and $500 for medical expenses. The case was tried before Kelly, J., and a jury which returned a verdict for $8,871. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed on condition that the verdict be reduced to $5,000.

[1]Reported in 155 N. W. 104.

---

Note.—As to excessiveness of verdicts in actions for personal injuries other than death, see note in L.R.A. 1915F, 30.

*Trafford N. Jayne* and *Durment, Moore, Oppenheimer & Haupt,* for appellant.

*Wickersham & Churchill,* for respondent.

HOLT, J.

Plaintiff and her sister owned a small grocery store in the outskirts of St. Paul. The defendant, a dealer in farm and dairy products, was in the habit of supplying this store with butter and eggs. On certain days it was the custom of defendant to send to stores, such as plaintiff's, servants with teams loaded with butter and eggs for sale and delivery. Theodore Johnson was the servant of defendant in charge of the team that went the rounds by plaintiff's store, and had been such for several months previous to the occurrence upon which this action is based. Whenever he sold any of defendant's goods to this store, he brought in and set the egg-cases between a counter and a refrigerator, some five feet back of the counter, and the butter-prints he placed in the upper left hand corner of the refrigerator. In the afternoon of February 24, 1913, Johnson came to the store, and plaintiff bought a half case of eggs and two prints of butter. Johnson brought in the eggs and set them down in the customary place, and then went to the wagon for the butter. In the meantime plaintiff undertook to look over the eggs, which she said were bought subject to inspection. In so doing she stood stooping over with her back to the refrigerator. When Johnson came with the butter-prints he stepped up beside her and opened the upper door of the refrigerator. This door was evidently so high that it could swing out over plaintiff when in this stooping posture without touching her. But, unfortunately, as Johnson was opening the door, or after he had swung it so that it stood at right angles with the front of the refrigerator, plaintiff raised up and struck the back of her neck, along the side of the cervical vertebrae, against the corner of the open door. It is claimed that this blow resulted in neurasthenia and other ills, which have deprived plaintiff of her wonted vigor and good health and made of her a hopeless bedridden invalid. She was past 44 years old in March, 1915, when the action was tried. Plaintiff sued claiming that defendant's servant was negligent in opening, without warning, the refrigerator door while she was in a position to get hurt if she should straighten up. The

answer denied negligence, alleged plaintiff's contributory negligence, and averred that in whatever Johnson did, in placing the butter in the refrigerator, he was not acting as the servant of defendant. The trial resulted in a verdict for plaintiff for $8,871. Defendant made the usual motion for judgment or a new trial, and appeals from the order denying the same.

The evidence is not very clear as to whether Johnson was in the act of opening the door, or had opened it and was placing the butter on the shelf when plaintiff raised up, but it is perhaps not important. We do not understand the complaint to charge that the door had negligently been left open longer than necessary, nor is there evidence to that effect. The earnest contention of defendant is that the opening of the door under the situation then existing shows no negligence. Plaintiff says she was aware of Johnson's presence at her side; she well knew that the butter order would be placed by him in the refrigerator; and that to do this he must open the door, swinging it over her. It is argued that Johnson was not bound to anticipate that she would be oblivious to what she knew he was doing, or about to do, and change from the stooping position she maintained for some three minutes, as she claims. Opening the door was, of course, not negligence in itself. If there be any negligence it arises out of the situation of plaintiff with relation to Johnson's act of opening and moving the door on its hinges; and it comes down to the proposition whether the ordinary prudent person should have anticipated plaintiff's possible change of posture while Johnson was doing his required work. Speaking for myself I can see no actionable negligence here. Accidents do happen in spite of the use of ordinary care. Every injury resulting from an act of another, the act being in itself neither negligent nor likely to result in injury except for some unexpected move of the one injured, should not entitle to damages. Persons come in close contact and have to work side by side, and it is beyond human power to anticipate every move of others. One doing such an ordinarily non-negligent act as that of opening a refrigerator door should not be held liable for the consequences of an unanticipated movement of a bystander. This is not like the case of Doyle v. Singer Sewing Mach. Co. 220 Mass. 327, 107 N. E. 949. There the plaintiff, a girl, stooped to pick up some articles from the floor which the defendant's servant had brushed off the

sewing machine he was sent to repair; while she was so stooping, the defendant's servant, seeing her and what she was doing, turned the machine cover so that when she raised up it would strike her. She had no knowlledge either from what had been done before, or otherwise, that he would turn the cover. But, on the other hand, it may well be said, juries and not courts are to determine whether a reasonably prudent person, placed as Johnson was, should have anticipated the probability of plaintiff's change of posture. The situation is simple and easily understood. It pertains to an everyday possibility. The law applicable was clearly and accurately given in the charge. The jury were in better position to pass on the matter than this court, they having a model of the refrigerator, made to scale, and photographs of the store and fixtures which are not before us. And so the majority believe the jury's findings of actionable negligence should stand. This being so, defendant's claim that there was proof conclusive of plaintiff's contributory negligence is also disposed of, for Johnson had at least as good opportunity to observe plaintiff's position and anticipate a change, as she had of seeing him and surmising his acts. If there was a question of negligence for the jury as to Johnson's conduct, there was likewise one for the jury as to plaintiff's and the jury's finding on both must stand.

The contention that Johnson was not acting within the scope of his employment as defendant's servant, but was doing something for plaintiff, when he placed the butter in the refrigerator, cannot be sustained. Johnson sold and received payment for defendant's goods. A delivery may undoubtedly include a deposit of the article sold in the place designated by the buyer. We imagine a person, in such an employment as Johnson's, who would refuse to deposit an article sold in any reasonable place designated by the buyer in his store, would not long continue in defendant's service.

Defendant asserts the verdict to be excessive. Plaintiff has, for more than two years, been kept in bed. There is no claim that she is malingering. The blow resulted in no lasting injury to any organ or structure. But it is thought by medical experts to have been sufficient to disturb the nervous system so that she became afflicted with neurasthenia or psychasthenia. In other words, plaintiff is suffering from functional neurasthenia. Plaintiff's medical expert, Dr. Ball, testified that recovery from

such an illness is quite probable, unless it has extended for two or three years; and also, that medical authorities "say that it increases arteriosclerosis; that it increases blood pressure. Now the result of this does not pass away; we can do very little for blood pressure or arteriosclerosis. Whatever there might be existing of that is a permanent thing. These other things are perfectly recoverable from." The physician who attended plaintiff about ten days after the injury, and for the most part since, testified that she was apparently in the same condition at the trial as when he was first called, but he also says he found no trouble then with her kidneys or heart. Now she has nephritis besides a weak heart. The defendant's medical experts, while admitting that the blow might be sufficient to bring on neurasthenia, were of the opinion that plaintiff, previous to the accident, was afflicted with kidney trouble and hardening of the arteries, and, being in that condition, the neurasthenia was more apt to develop. It is plain from the medical opinions that the nephritis and arteriosclerosis from which plaintiff now suffers are the most serious ailments, so far as the prospect of recovery goes, and not the neurasthenia. There seems to be almost demonstrable evidence that the arteriosclerosis was of long standing. The blood pressure, the indicator of this disease and its progress, should be 135 to 140 in a person of plaintiff's age in normal health. At the trial her blood pressure was 180, and one year before that it was 172. She was injured two years before the trial. There is no explanation of how the blood pressure could have risen only 8 points during one year and over 30 during the year previous. Upon this record, we think it so doubtful that this serious trouble, the hardening of the arteries, was the result of the accident that no damages therefor should have been awarded. The size of the verdict indicates that such damages are included. Therefore we believe justice requires a new trial, unless plaintiff is willing to accept a substantial reduction of the award. If a written consent to a reduction of the verdict to $5,000 be filed by plaintiff in the district court within ten days after the remittitur is filed therein, no new trial will be granted. Otherwise the court below will proceed with a new trial.