## ALFRED C. WELCHLIN v. FAIRMONT RAILWAY MOTORS AND ANOTHER.[1]

May 23, 1930.

No. 27,883.

[1]Reported in 230 N. W. 897.

*Leo J. Seifert,* for relator.
*Jensen & Lyons,* for respondents.

DIBELL, J.

Certiorari on the relation of the employe against the Fairmont Railway Motors, his employer, to review the order of the industrial commission holding that the disability for which he had been receiving compensation upon the basis of temporary total disability had ceased and denying him compensation for partial disability.

On March 6, 1929, the relator was injured while in the employ of the Fairmont Railway Motors. The respondent Anchor Casualty Company is the insurer. The handle on the carriage of a lathe at which he was working hit him on the inside of his right leg in the region of the groin. The accident arose out of and in the course of his employment. The commission found that he was temporarily totally disabled from March 6, 1929, with the exception of May 13, 14, and 15, when he worked, until August 8, 1929, the date of the final hearing, at which time the commission found that temporary total disability had ceased and that there was no partial disability. He was paid on the basis of temporary total disability until that date. The question is whether the finding of the commission is sustained by the evidence.

The plaintiff in a common law action for negligence may recover damages for traumatic neurosis or neurasthenia. McLaren v. G. N. Ry. Co., 120 Minn. 531, 139 N. W. 621; Donovan v. Tilden Produce Co. 131 Minn. 327, 155 N. W. 104; Lake St. E. R. Co. v.

Sandy, 137 Ill. App. 244, affirmed in 235 Ill. 194, 85 N. E. 300;
St. Louis, I. M. & S. Ry. Co. v. Smith, 118 Ark. 72, 175 S. W. 415;
Edwards v. Seattle, R. & S. Ry. Co. 62 Wash. 77, 113 P. 563.

Under the compensation act the injured workman does not recover damages as such for an injury but receives a stated compensation fixed by the statute as compensation for disability; and he may have compensation for neurosis if it is a proximate result of his injury and results in disability. Ashland Limestone Co. v. Wright, 219 Ky. 691, 294 S. W. 159; Hunnewell's Case, 220 Mass. 351, 107 N. E. 934; Rialto L. & Z. Co. v. State Ind. Comm. 112 Okl. 101, 240 P. 96, 44 A. L. R. 494; Eaves v. Blaenclydach Colliery Co. Ltd. (1909) 2 K. B. 73. And see Bramble v. Shields, 146 Md. 494, 127 A. 44.

In the Eaves case the court said [(1909) 2 K. B. 75]:

"The learned judge says he thinks that, although the man honestly believes he is not able to do the work, and although he is not shamming or malingering, it is sufficient for the employers to shew that the muscular mischief is at an end. I am entirely unable to assent to that view. The effects of an accident are at least twofold: they may be merely muscular effects—they almost always must include muscular effects—and there may also be, and very frequently are, effects which you may call mental, or nervous, or hysterical, whichever is the proper word to use in respect of them. The effects of this second class, as a rule, arise directly from the accident from which the man suffered just as much as the muscular effects do, and it seems to me entirely a fallacy to say that a man's right to compensation ceases when the muscular mischief is ended, though the nervous or hysterical effects still remain. The result of this judgment, however, is that the man is still suffering from the accident, and he has not wholly recovered from the nervous effects of the accident, which are just as real and just as important as the muscular effects and make him unable to work. I hope nothing that I say here will ever be supposed to give any colour to malingering; and if the learned judge had found that the man was malingering, the position, of course, would have been entirely the other way,

and that would have been a question of fact for him, and we should not have interfered with the finding."

At the time of the final hearing in August the relator limped. His limp had continued from the time of his injury. He had a sort of "straddling" movement of the leg, giving him a "straddling" gait." No one questions its existence. He did not have it before the accident.

The testimony of the medical experts is not in accord. The two attending physicians of the relator see objective symptoms of a present injury. So does another physician who was called by the relator as an expert and took X-rays. They conclude that the relator is unable to work at his former employment though his disability is not total. The relator says he tried to work and could not. He does not claim total disability but claims that he cannot work at his former job, and in this he is supported by the physicians who attended him. He is doing bookkeeping, apparently trying to learn, and gets nothing for it. There is other word which he might do for pay. Two expert physicians called by the respondents are of the opinion that he suffered no serious injury, that he has recovered, that he could return to work now if he would, and that his limp, which may be accounted for upon the theory of traumatic neurosis, is not disabling. One of them testifies:

Q. "Doctor, what is your opinion as to whether or not Mr. Welchlin is able to go to work?

A. "I think he can work all right.

Q. "What do you think is his trouble, if any?

A. "Possibly a traumatic neurosis or something covered by such a term. His symptoms are entirely subjective.

Q. "What do you think about this lameness?

A. "I think when he gets back to work he will forget that all right."

Q. On cross-examination. "Now, why does he limp, doctor?

A. "Not because of any physical injury that I am able to determine.

Q. "It is your opinion that it is all in his head, putting it roughly?

A. "I think that is correct, yes, sir.   *   *   *

Q. "What do you mean by neurosis?

A. "It is a fixed notion that seems to control certain actions.

Q. "How long do you think Welchlin would have to work at this machine before that neurosis would be wiped out?

A. "I think more the settling up of this case than working at that machine will suffice to re-establish the normal gait.

Q. "Then you think that the neurosis is due to the fact that this case hasn't been settled?

A. "That is usually the case.

Q. "Well, you have observed Welchlin, his actions and his physical conditions, you have talked to him, you know his idiosyncrasies. Would you say that just as soon as this case is settled up that he will quit limping?

A. "No.

Q. "But you do think that if he would go back to work at this machine that he would quit limping after a while?

A. "Yes, sir, I do.

Q. "Then it isn't the settling up of the case that will stop him?

A. "I prophesy the settling up of the case and the getting back to work."

The other, after testifying at length, gave his opinion as follows:

A. "I believe that Mr. Welchlin is able to work at the present time. I see no reason or can find no reason why he is incapacitated.

Q. "And when you examined him on May 24, 1929, what was your opinion?

A. "The opinion was the same then as it is now.

Q. "Did you feel that on May 24, 1929, Mr. Welchlin was able to return to work?

A. "I did.

Q. "How do you account for this limp that Mr. Welchlin evidences?

A. "How do I account for his limping?

Q. "For his limping?

A. "He—oh, it is either a habit or else it is a traumatic neurosis."

We do not understand that the respondents claim that the relator is actually or consciously malingering. They claim that he is in a condition out of which he could get himself if he would and that he could go to work now if he would; that is, if he did go to work his condition would be better. To them it is a question of his pulling himself together and getting out of his neurotic condition. The evidence quoted is that favorable to the respondents. And the physician of the respondents first testifying and referring to neurosis in general says:

"And I might say one other thing, it isn't any maliciousness necessarily. The patient may evidence such a thing, it might not be straight malingering at all; it may be a neurosis that the person has little control over until things are wiped off."

The language quoted from the English case is helpful and somewhat pointed. So are the other cases cited in connection with it. The evidence does not indicate that the partial disability, if there is such, will last long. It may take some effort for the relator to put himself in normal condition, and there may be attendant pain. But we are unable to see how it can be found that no disability remains. We think the finding of the commission is not sustained. There is a limited partial disability. The relator does not claim more. He should and can make an effort to get back at work that will compensate him. For all we can see he can do something now worth while, and soon he will be himself again and perhaps now is. The compensation act is not a pension act. The physicians of the respondents concede that something is the matter. They think he might control himself so as to work. That is about as far as they go. A real physical disability aside from this they do not admit. They substantially admit traumatic neurosis and think he can overcome it.

Order reversed.