## Holobinko, Appellant, *v.* Moshannon Smithing Coal Co. et al.

Argued April 24, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

George Jerko and Carl A. Belin, for appellant.

David L. Baird, of Thompson & Baird, for appellee.

OPINION BY RHODES, J., July 18, 1941:

The claimant, Harry Holobinko, filed his petition for compensation on October 19, 1938, and alleged therein that he sustained accidental injuries on May 12, 1938, while in the course of his employment with defendant employer. After several hearings the referee disallowed compensation and dismissed the petition. Claimant appealed to the Workmen's Compensation Board, which reversed the referee and made an award in favor of claimant for total disability from May 12, 1938, to October 15, 1939. The court below sustained the exceptions of defendants to the award of compensation, set aside the award, and entered judgment in favor of defendants.

The question involved on this appeal is whether claimant met the burden of proving by substantial and competent evidence that his disability was caused by an "injury by an accident in the course of his employment" within the meaning of section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as reenacted, amended, or further amended by the Act of June 4, 1937, P. L. 1552, 77 PS §§ 411, 431. This same section also contains the following: "The terms 'injury' and 'personal injury,' as used in this act, except as used in article two, shall be construed to mean only violence

to the physical structure of the body, and such disease or infection as naturally results therefrom." [1]

The Workmen's Compensation Board made, inter alia, the following finding of fact: "Tenth: That after considering all the evidence in this case, the Board finds that the claimant sustained an accident on May 12, 1938, when he slipped and fell while pushing a loaded car of coal, and experienced pain in his left lower abdomen. The claimant then developed a nervous reaction to his injury, in the nature of a mental disturbance, known as a neurosis, which condition was corrected by an exploratory operation performed on August 18, 1939. As a result of said accident and resulting injury and illness, claimant was totally disabled until October 15, 1939."

The court below was of the opinion that the evidence sustained the board's finding of an accident, and that there was proof that claimant suffered from a neurosis, but held that "there is no proof that there was any physical injury."

In *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 3 A. 2d 377, our Supreme Court recently stated that an accident cannot be inferred merely from an injury, and that there must be some evidence, either direct or circumstantial, of an accident, and that an injury cannot be inferred simply because there was an accident, but that there must be proof that the injury resulted from an accident. In the Adamchick case it was also held that there was no accident. In the instant case there seems to be no dispute that claimant had an accident. Therefore, a review of the evidence will be for the purpose of ascertaining whether it establishes to the required degree that his injury and disability resulted from the accident.

On May 12, 1938, and for some time prior thereto,

---

[1] This portion of section 301 reads the same in the Act of June 21, 1939, P. L. 520, 77 PS § 411.

claimant was employed by defendant employer as a coal miner. About 1:55 p. m. on the afternoon of that day he and a fellow workman, George Klesser, were pushing a car of coal from their working place in the mine. As they pushed the car claimant's left foot slipped, and he went down on his knees. He immediately complained of pain in his left lower abdomen, and quit work. He testified: "I just weak-like there, I can't move." Klesser testified: "Well, when we was pushing a car, it was kind of hard starting it, hard pushing. When he moved, why he said he fell down and hurt his side. ...... Well, he grabbed himself by the side there and went down like this. He said, 'It hurts in there.' ...... He said it was like a hot iron." Claimant was unable to continue his work, and at 2:30 p. m. he rode out of the mine on a mine car. Upon arriving outside he reported to the mine foreman and described what had occurred. By the latter he was advised to consult a physician, and the following day he went to see Dr. R. L. Williams. On June 14, 1938, claimant was admitted to the Philipsburg State Hospital. The pain of which he complained at that time was confined to a small area in the left lower side of the abdomen, which was tender and very sensitive. X-ray and physical examinations failed to indicate any pathological disturbance in that area. Periodic injections of novocaine and salt solution were administered. Claimant stated that these injections afforded him temporary relief.

At the conclusion of the first hearing on July 12, 1939, claimant agreed to be hospitalized for an exploratory operation in the left inguinal region of the abdominal wall in order to ascertain, if possible, the cause of his distress. The operation was performed on August 18, 1939, by Dr. Edward Pardoe. No tear in the fascia or muscle sheath of the abdominal wall, nor any other pathology in that region of an organic nature,

was discovered. After the operation he improved, and was able to return to work on October 15, 1939. Hearings before the referee were resumed on November 1, 1939.

From the record it clearly appears that prior to the day of the alleged accidental injury claimant was a steady workman, and had not complained of any pain or trouble in his left side.

Claimant presented the testimony of several medical experts.

Dr. Lester Luxenberg testified that he examined claimant in June, 1938; that claimant gave him a history of the pain in the lower left abdomen and back which came on following the accident while he was at work pushing a car of coal; that his examination showed a small area of the lower left side of the abdomen which was tender and very sensitive; and that he found nothing else wrong at that time. Dr. Luxenberg was later called by defendants, and testified that the only evidence of an injury was claimant's complaints of pain.

Dr. A. C. F. Zobel examined claimant on March 28, 1939. At that time he diagnosed his condition as a sprain of the left lower abdominal muscles, and suspected that there might be present a tear of the fascia or muscle sheath, that a small portion of the muscle had been caught in the fibres, and that the small sensitive nerves distributed to the muscles were involved. He further testified: "Q. Now you stated there in that opinion, as I recall, it was your opinion that this man had had a strain, is that correct? A. That's right. Q. And when was the first time you examined him? A. March 28, 1939. Q. And this was how long after the accident? A. Accident May 12, 1938. Q. And then, am I correct in assuming that you derived that opinion from the history as given to you by the claimant? A. That's right."

Dr. S. B. Meyers, a neurologist, testified that in his opinion claimant had developed a nervous reaction to

his injury, in the nature of a mental disturbance, which he described as a neurosis, and that this condition was definitely related to the injury which claimant said he had sustained on May 12, 1938. Dr. Meyers had recommended an exploratory operation to determine whether there was any tissue damage, such as a separation of the fascia, and to set at rest claimant's mind, if possible, and to give a reassuring effect in treating his neurosis.

Dr. Pardoe, who assisted at the exploratory operation on August 18, 1939, stated that they found no actual injury, and that claimant's symptoms were entirely subjective, and that it may be possible that he was neurotic.

Defendants called two medical experts in addition to Dr. Luxenberg. Dr. A. J. Waterworth testified that he examined claimant in December, 1938, and that he found no visible signs of injury, but that claimant's pain may have been the result of a sprain.

Dr. Williams, who saw claimant the day following the alleged injury, testified that at the time of the examination claimant had no external evidence of an injury. He made a provisional diagnosis of a sprain of the abdominal muscles, and noted in his record that claimant "developed this sharp, burning pain in the right lower quadrant of his abdomen, and the pain was on the level of the right anterior spine of the ileum, and the pain radiated across to the same relative position on the left side."

There would seem to be no doubt that when Dr. Williams examined claimant the day after the accident he came to the conclusion that claimant had sustained some injury. He testified: "Q. And what date was your first examination? Have you got the date there? A. Why, Mr. Holobinko was injured May 12, 1938, I think. He came in to see me and was treated from the period, from the time he was injured." Dr. Williams further testified: "Q. But he did complain of pain to

you, didn't he? A. Yes, he did still stick to it. He was 'hepped' on it. Q. How's that? A. He was 'hepped.' Do you know what that means? He got his mind set on it, and wouldn't take it off, in other words. Q. In other words, do you mean he had some mental condition as the result of this alleged accident, or accident? A. Yes, sir."

Dr. Williams, after treating claimant for several weeks, advised him "you better work that out." Claimant then returned to the mines, and after working a few hours he was forced to quit because of the pain in his side, and was unable to return to work until October, 1939, after his recovery from the operation on August 18, 1939.

The evidence establishes an accident. Immediately after claimant slipped and fell he experienced, as he testified, a pain in his left side which persisted and caused continuing disability thereafter until the exploratory operation in August, 1939. Dr. Luxenberg testified that if claimant's complaints were true he would have been unable to work from the date of his injury. If claimant's testimony is to be believed he suffered a sudden and disabling change in the physical structure of his body when he slipped and fell while pushing the car loaded with coal, that is, an injury by an accident. "The existence of many bodily sensations and ailments which go to make up the symptoms of disease or injury can be known only to the person who experiences them. The statement and description of these necessarily enter into and form part of the facts on which the opinion of a medical expert, as to the conditions of health or disease, is founded; and inasmuch as they can be proved only by the declarations of the patient, such declarations must be admitted, or proof of them would fail altogether": *Lichtenwallner v. Laubach*, 105 Pa. 366, at page 370.

The testimony would indicate that claimant's physical condition prior to the accident had been good, and that

he was without any symptoms of pain prior to this occurrence on May 12, 1938.

The medical testimony, we think, satisfactorily proves that claimant's subsequent mental condition was definitely related to his accidental injury, and that this injury was the underlying cause of his entire disability The testimony of claimant and of Dr. Meyers sustains the findings of the board. These findings, however, are not without support, in our judgment, from other witnesses, although Dr. Williams thought that claimant was malingering. Dr. Meyers held the opposite opinion.

In *Natalini v. Riefler & Sons, Inc.*, 286 Pa. 301, 133 A. 547, the claimant was engaged in splitting a log when he fell backwards. He immediately complained of pain and injury in his back, quit work, and went home. The next morning he saw a physician and complained of the injury to his back. The physician testified that upon his examination of claimant he found no visible signs of injury, but that claimant complained of pain in his back and that it was sore to the touch. The judgment of the lower court affirming the award of the board was affirmed. In that case the Supreme Court also said that (p. 304) : "The mere fact that the physician who examined plaintiff the day following the accident discovered merely subjective symptoms, but no outward evidence of injury, does not require us to reject plaintiff's evidence because not further corroborated by medical testimony." See, also, *Richkowsky v. Lehigh Valley Coal Co.*, 276 Pa. 577, 120 A. 551.

It is to be borne in mind that the accidental injuries which claimant sustained, as found by the board, occurred on May 12, 1938, while the exploratory operation was made on August 18, 1939, at a time when any internal physical damage may have been fully repaired. Claimant's neurosis which followed the injury would not require for its continuance the continued presence of obvious injury, and the failure of the exploratory operation to disclose such a condition in no way dis-

proves the existence of claimant's disabling condition following the accidental injury. It was admitted by some of the medical experts that, in a case of this kind where there is no outward evidence of injury and no exploratory operation is made until more than a year after the alleged injury, proof of an injury must, to a large extent, depend upon the subjective symptoms. In every case there is always a possibility that subjective symptoms are feigned, but the credibility of a claimant in testifying to such matters is for the fact-finding bodies, as is the credibility of every witness in a compensation case. It is superfluous to say that there may be an injury from an accident without any outward manifestations, and that an accidental injury may exist which is provable only by the individual's giving the subjective symptoms which he experiences. Such harm or hurt may be violence to the physical structure of the body, as much as a cut or a broken bone.

We think it is sufficient to support the award, in the absence of any other cause shown, that following claimant's slipping and falling he experienced pain in his side and immediate disability, both of which continued, and that there was a resulting neurotic condition or traumatic neurosis. Compensation cannot be denied because the medical experts did not agree as to the physical processes which produced claimant's pain, or that they were unable to find any visible signs of injury. A neurosis resulting from an accidental injury is compensable. *Redrick v. Knapp Bros. Co. et al.,* 127 Pa. Superior Ct. 92, 193 A. 117; *Seko v. Hub Knitting Co. et al.,* 142 Pa. Superior Ct. 309, 16 A. 2d 138. See, also, *Welchlin v. Fairmont Railway Motors et al.,* 180 Minn. 411, 230 N. W. 897; *Best v. London Guarantee & Accident Co.,* 100 Mont. 332, 47 P. 2d 656.

The fact that claimant was willing to undergo a surgical operation was not to be lightly dismissed, and was properly considered by the board. His distress following his accident was sufficiently real for him to

submit to an operation to have it corrected. We are of the opinion that there was sufficient substantial and competent evidence in this case to support the finding of the board that claimant suffered an accidental injury which caused traumatic neurosis, and that he was totally disabled until October 15, 1939.

Judgment of the court below is reversed, and the record is remitted that judgment may be entered on the award in favor of claimant and against defendants.