RALPH E. QUILLEN *vs.* O. D. PURINGTON CO., INC.

JANUARY 23, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This is a petition by an employee to review a preliminary agreement for workmen's compensation under general laws 1938, chapter 300. The case is before us on his appeal from a decree of the superior court denying and dismissing the petition.

The preliminary agreement, which was approved by the director of labor on September 2, 1942, stated the cause of injury as the fall of a staging resulting in a slight fracture of petitioner's skull. On that date a settlement receipt stating that petitioner was able to return to work on June 5, 1942 at a standard wage per week was likewise approved by the director of labor. The instant petition to review claims that petitioner's earning capacity as a carpenter has decreased due to the original injury.

In support thereof petitioner testified that he was injured while in the respondent's employ in the city of Newport on April 21, 1942 when the staging on which he was working as a carpenter collapsed; that he fell about twenty feet and was struck on the head by a plank from the staging; that he was taken to the Newport Hospital but reported back for work the next morning; that he continued to work until May 7 and then consulted a doctor for the treatment of headaches which had been increasing in intensity since the accident; that previously he had not suffered from such headaches; that he returned to work after June 5 and was given a light job which involved no climbing; that he continued in this employment until he was laid off about June 30; that on July 16 he went to work for a screw company in New Bedford but after three weeks he had to give up the job because he could not stand the noise.

He further testified that he was in military service from October 1942 to November 4, 1944, most of the time as a radio repairman; that he participated in the invasion of Italy, including service at the Anzio beachhead; that while

serving in Africa his headaches had only been slight but that after his service at Anzio they became more severe; that he was taken to the hospital in July 1944 and received treatment from that time until his discharge from the service; that for two years thereafter he received payments for a service-connected disability, namely, a nervous condition, which payments have since been reduced from 50 per cent to 30 per cent; that after his military service he was employed in many different occupations for the government and for various employers, but has not done any carpenter work since the date of his accident.

In cross-examination he testified that he associated his headaches with noisy places where he worked; that during the Italian campaign he went to bed, sometimes twice a week, when his headaches were severe; and that the 50 per cent disability which he received on discharge had nothing to do with the accident in Newport but was based on a nervous condition due to service in the army.

Doctor Samuel Orlov, called by petitioner, testified that he first saw him on May 12, 1942 at his office in Wareham, Massachusetts; that after receiving a history of the accident he diagnosed his condition as "brain posttraumatic and fracture contrecoup of the skull"; that petitioner complained of mild to severe intermittent headaches accompanied by dizziness and blurring of vision which were aggravated by bending; that he X-rayed the skull, did a lumbar puncture, and kept petitioner in the hospital for four or five days; that he was discharged therefrom on May 14 to receive further treatment at the doctor's office; and that thereafter he saw him on and off until he or petitioner went into military service.

Doctor Orlov, who resumed practice in April 1946, further testified that he next saw petitioner on November 26, 1946; that at that time he complained of severe headaches in the frontal area, accompanied by nausea and dizziness; that the pains were so severe he treated him with opiates; that he could find no evidence of his having had headaches before

the accident; that he last saw petitioner on June 7, 1951; and that he could not find anything to account for the headaches except the accident complained of. He expressed the opinion that petitioner cannot resume his occupation as a carpenter and that he is going to be bothered with headaches the rest of his life. In cross-examination Dr. Orlov agreed that petitioner's headaches present a neurological problem and expressed the opinion that his army service aggravated the headaches of which he now complains.

Doctor Harvey B. Sanborn testified that he examined petitioner on July 13, 1950; that he received from him the history of his accident; that he diagnosed his condition as "Traumatic hysteria, which was made worse in service and from which he has never recovered"; and that he found no objective symptoms attaching themselves to such traumatic hysteria, a condition that is not necessarily disabling.

The respondent presented as its only witness Dr. Raoul G. Provost, a specialist in neurology and psychiatry since 1907. He served for fourteen months during World War I as chief of the neuropsychiatric service at the hospital at Camp Logan, Texas, and later as examiner for the Veterans Bureau. His ample qualifications appear of record and were not disputed. Doctor Provost testified that he examined petitioner in the office and presence of Dr. Orlov in Wareham, Massachusetts, July 19, 1942; that he received the history of petitioner's fall from the staging; and that he found no physical abnormality relating to the accident and injury. He expressed the opinion that petitioner "sustained *no cranial cerebral injury* as a result of the accident" and that "existing complaints, chiefly of unremitting headache, in the absence of underlying pathology must be regarded as purely a neurotic manifestation, hysterical in type, psychical in origin." (italics ours) Doctor Provost expressed the further opinion that when he examined petitioner in July 1942 he had no disability from the

effects of a skull fracture attributable to the accident of April 21, 1942, none when he went into service in October 1942, and none since that time.

After hearing, the trial justice entered a decree denying and dismissing the petition upon the following findings of fact: "1. Respondent agreed to pay compensation for incapacity beginning May 4, 1942 due to a slight fracture of skull sustained April 21, 1942. 2. Petitioner has not proved by a fair preponderance of the credible evidence that he is now suffering, or has suffered since the execution of settlement receipt, from effects of the injury set forth in the preliminary agreement." From the entry of that decree, petitioner filed a claim of appeal setting forth five reasons.

In support thereof he has briefed and argued only two of such reasons. He contends that the trial justice erred in considering any of the testimony of Dr. Provost and also that proof of petitioner's disability is undisputed. The first contention is based upon the claim that, since Dr. Provost expressed the opinion that petitioner did not receive a skull fracture as a result of the original accident of April 21, 1942, and since the preliminary agreement described his injury as a slight skull fracture, the trial justice should have disregarded entirely such doctor's testimony.

We cannot agree with this contention. It is conceded that in view of the injury described in the preliminary agreement the *existence* of a slight skull fracture was not open to question on the petition to review such agreement. However, the expression of the doctor's opinion that there was no skull fracture would not necessarily compel the trial justice to discard entirely his other testimony, which was competent and relevant to the issue properly on review. That controlling issue was not whether petitioner had an original skull fracture but whether at the time of the hearing on this petition he was suffering from an incapacity in whole or part causally connected with the injury received

in the original accident and described in the preliminary agreement as a slight skull fracture.

In that connection Dr. Provost without objection gave other testimony that was competent and relevant. He was asked to assume that the petitioner had received a skull fracture and to give his opinion as to whether petitioner was suffering any effects therefrom. This is clear from the following excerpt from the transcript: "Q. Now, doctor, when you examined the man in July of 1942 did he show then any evidence of the continued effects of a skull fracture, assuming that he did, in fact, have a skull fracture in April of 1942? A. No." Later in cross-examination the doctor's other testimony was summarized in a question by employee's counsel as follows: "Now, your final diagnosis was, all in capital letters—'A. No Cranial Cerebral Injury.' " To this the doctor replied: "That is right."

Elsewhere in his testimony the same doctor explained substantially that in the absence, as here, of any underlying pathology and without a cerebral injury as distinguished from mere skull fracture, it was unreasonable to conclude that petitioner's hysteria was posttraumatic and due in any way to the original accident and injury. He also expressed the opinion that his existing complaints were hysterical in type and purely "psychical in origin"; that they were not attributable in whole or part to the original blow and injury or to any posttraumatic effects causally connected therewith; that in effect they were related solely to petitioner's army experience, disability and hospitalization in Italy. In his opinion the present hysteria was a brand new nervous disorder, was not the same hysterical episode initially complained of, and was not causally related at all to the original accident and injury.

In our judgment the evidence is clearly conflicting on the controlling issue to be found by the trial justice. On the one hand there was evidence tending to show that petitioner's present hysteria was causally connected, at least in part, with the physical injury growing out of the accident

and described in the preliminary agreement. On the other hand there was other testimony justifying the conclusion that petitioner's present hysteria was not causally attributable in whole or part to the original injury as described in such agreement, but was related solely to a new and different nervous disorder which was unrelated causally to his original accident and injury.

From such conflicting evidence the trial justice found that petitioner had not proved by a fair preponderance of the evidence that he is now suffering or has suffered since the execution of the settlement receipt from effects of the injury set forth in the preliminary agreement. It is well settled that in workmen's compensation cases this court does not weigh the evidence nor pass upon the credibility of the witnesses, and that where there is legal evidence in the record to support the findings of the trial justice such findings are conclusive by virtue of the statute.

Upon a careful review of the transcript we are unable to agree with petitioner's contentions because we find probative evidence therein, at least by reasonable inference, to support the findings of the trial justice. In consequence thereof we are of the opinion that petitioner's appeal should be denied and dismissed and the decree heretofore entered should be affirmed.

This conclusion is not contrary to the law stated in *Wareham* v. *United States Rubber Co.*, 73 R. I. 207. In that case we held that disability due to anxiety neurosis *growing out of and caused by* a physical injury arising out of and in the course of employment is compensable. We affirm that as a correct statement of the law. But in that case the trial justice found that there was a causal connection between the employee's anxiety neurosis and the original injury, and we held there was evidence at least by reasonable inference to support such finding. Here the trial justice found that there was no such causal relation between the petitioner's present hysteria and the injury described in the preliminary agreement, and in our opinion

there is evidence reasonably justifying that inference. These cases therefore though different as to facts apply the same rule of law.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

CONDON, J., dissenting. On the view which I take of the evidence and the law applicable thereto I am constrained to dissent from the majority opinion. The evidence, in my opinion, is undisputed that petitioner, although he has no physical disability, is suffering from a posttraumatic neurosis which is incapacitating him from performing his regular work as a carpenter. That condition first became manifest after the accident in which he received the blow that fractured his skull. He testified that prior thereto he never had headaches of any kind; that thereafter he suffered from them continually; and that they had been growing worse. The respondent did not contradict that testimony nor did it present any evidence that would otherwise account for petitioner's symptoms except the testimony of Dr. Provost that they were "psychical in origin."

Doctor Orlov, who treated petitioner after the accident, could find nothing to account for the continuance of his headaches and their growing intensity. He testified that since he could find no physical basis therefor he concluded they were neurological and finally sent him to Dr. Sanborn, a neurologist, for an examination. Doctor Sanborn testified that he obtained from petitioner a history of his complaints and gave him a neurological examination from which he formed the opinion that petitioner had developed a traumatic hysteria following the accident; that he had never recovered therefrom; and that such hysteria was made worse by his service in the war.

Doctor Provost, a neurologist who examined petitioner on behalf of respondent, found that he had no physical abnormalities and no continued effects of a skull fracture. He further testified that petitioner "sustained no cranial

cerebral injury as a result of the accident," and that his complaints presented "purely a neurotic manifestation, hysterical in type, psychical in origin." He did not otherwise account for the onset of such hysteria. In other words his testimony was to the effect that while petitioner's condition was neurotic, it had no organic neurological basis but was due to fear or hysteria.

Obviously there is no real conflict in the testimony of these three medical witnesses. All agree that petitioner is not presently suffering any ill effects physically from the slight fracture of his skull. They are also in agreement that his symptoms are due to a neurosis arising not from any damage to his brain as a result of such fracture but solely from anxiety or hysteria following the accident. When Dr. Provost expresses the opinion that petitioner's complaints are psychical in origin it is clear that he means they have no physical basis. And such is precisely the meaning of Dr. Sanborn's opinion that petitioner's condition was one of traumatic hysteria.

Apparently the trial justice misconceived either the true nature of such testimony or the law applicable to it. As far as the law is concerned a neurosis which can reasonably be related to the injury received as a result of the accident is compensable notwithstanding that such neurosis is purely psychical or hysterical and without any present physical basis. *Wareham* v. *United States Rubber Co.*, 73 R. I. 207. In that case the undisputed medical testimony was that the injured employee's complaint had only an "emotion basis" and not an "orthopedic basis." He had received an injury to his back by the accident, but after that injury had been successfully treated he still *feared* that his back was permanently injured. His complaint was diagnosed by a psychiatrist as an anxiety neurosis which was continuing to disable him by retarding his recovery from the back injury despite the fact that such injury required no further treatment.

On those facts the trial justice held that the employee

was entitled to compensation. His decision and the decree entered thereon were objected to here on the ground that such facts did not establish a legally compensable injury. We affirmed that decree and expressly declared that, so long as there was evidence to connect the employee's nervous state with his physical injury by showing that the anxiety neurosis manifested itself for the first time following the accident, the disability arising from such anxiety or fear was compensable. In other words this court approved the law which the trial justice applied to the facts.

In the case at bar the trial justice was confronted with a similar factual situation but failed to apply that law to the facts and thereby erred. Unless I am wrong in my understanding of the evidence here, I fear that the comment on the *Wareham* case in the majority opinion has weakened the authortiy of that decision as to what character of evidence is necessary to establish compensability in the case of a posttraumatic neurosis.

The evidence here upon which rests the medical diagnosis of petitioner's neurosis is no less probative than the evidence in the *Wareham* case of a relation or connection between such neurosis and the physical injury which he received by the accident. Indeed it appears to be more closely related in that respect than the evidence in some cases in other jurisdictions where an award of compensation for a neurosis has been approved.

In *Holobinko* v. *Moshannon Smithing Coal Co.*, 145 Pa. Super. 489, an employee slipped while pushing a coal car. He immediately complained of pain in the lower abdomen and quit work. Before the accident he was a steady worker and had never complained of any such pain. Notwithstanding that X rays disclosed no pathological disturbance in that area and a later exploratory operation showed no pathology of an organic nature there, he was nevertheless found to be disabled by reason of his mental reaction to his injury which the neurological testimony described as in the nature of a neurosis. In that case the court observed

at page 496 of the opinion: "Claimant's neurosis which followed the injury would not require for its continuance the continued presence of obvious injury, and the failure of the exploratory operation to disclose such a condition in no way disproves the existence of claimant's disabling condition following the accidental injury."

Probably the most extreme example of pure hysteria which was held to be compensable is *Hunnewell's Case*, 220 Mass. 351. In that case the employee suffered a slight injury to his eye from which he soon recovered completely as far as the organ itself was concerned. However, following the injury he became nervously upset to such an extent as to cause hysterical blindness. Although the court said that the physical condition of his eye amply warranted his returning to work they nevertheless held that he was incapacitated by such hysteria.

It is clear from those cases as well as our *Wareham* case that even where the neurosis following the accident is psychical in origin without any present basis in a continuing physical injury it is compensable, provided it is of a nature that can be reasonably related to the accident. In the case at bar the reasonableness of the relation between petitioner's continuing severe headaches and the injury received in the accident is beyond question. It must be remembered that we are not here concerned with whether or not from a medical viewpoint the cause of such continually recurring and increasingly severe headaches was the blow on the head which petitioner received. It is sufficient for our purpose to know that such symptoms, even though they have no pathological basis in any present physical injury, are indisputably the results of hysteria following the accident. If such hysteria is genuine and not in reality a manifestation of malingering it is enough to justify an award of compensation. Here there is no evidence that petitioner's symptoms are feigned.

On the foregoing view of the law and the evidence I am of the opinion that the decision of the trial justice denying

petitioner compensation is without legal evidence to support it. Hence I would sustain petitioner's appeal, reverse the decree appealed from, and order a decree to be entered in the superior court awarding petitioner compensation for partial incapacity.

*Fergus J. McOsker*, for petitioner.

*Boss & Conlan, James C. Bulman*, for respondent.